IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 96-10870
_____


ROBYN SANDERS; CYNTHIA MULLANIX,

                              Plaintiffs-Appellants-Appellees,

                    v.

CASA VIEW BAPTIST CHURCH, ET AL.,

                              Defendants,

CASA VIEW BAPTIST CHURCH,

                              Defendant-Appellee,

SHELBY BAUCUM,

                              Defendant-Appellant.


_____

Appeals from the United States District Court
for the Northern District of Texas
_____
February 11, 1998

Before POLITZ, Chief Judge, BENAVIDES, and PARKER, Circuit Judges.

BENAVIDES, Circuit Judge:

     The plaintiffs, Robyn Sanders and Lisa Mullanix, brought suit against their employer, Casa View Baptist Church (CVBC), and one of its ministers, Shelby Baucum, for alleged violations of Title VII and Texas law arising out of Baucum's conduct as their marriage counselor and supervisor at CVBC.  The district court granted summary judgment in favor of CVBC.  The claims against Baucum—that he committed malpractice and breached his fiduciary duties as a marriage counselor by, among other things, encouraging and

consummating a sexual relationship with each plaintiff—proceeded to trial. The jury found for the plaintiffs and awarded punitive damages on each claim.

On appeal, Baucum asserts that the plaintiffs' claims and the district court's jury instructions were barred by the First Amendment, and that the plaintiffs' punitive damages awards were excessive. Also before us are the plaintiffs' contentions that CVBC was not entitled to summary judgment and that the district court abused its discretion by excluding an untimely affidavit from the summary judgment record. We affirm.

## I.

We review a grant of summary judgment *de novo* "under the same standards as that applied by the district court. Summary judgment is required when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Ellert v. University of Texas*, 52 F.3d 543, 545 (5th Cir. 1995). Consequently, we set forth the pertinent facts in the light most favorable to the plaintiffs.[1]

In 1988, CVBC hired Baucum to be its Minister of Education and Administration (MEA). As MEA, Baucum's duties did not include counseling, and he knew that he was not a member of the CVBC staff

---

[1] We apply a similar standard of review when considering a district court's denial of a motion for judgment as a matter of law. *Bellows v. Amoco Oil Co.*, 118 F.3d 268, 273 (5th Cir. 1997). Because Baucum does not challenge the sufficiency of the plaintiffs' evidence, we describe the facts regarding his behavior as a counselor as they were found by the jury.

responsible for providing spiritual counseling to CVBC members. He also knew that CVBC had a written policy of referring church members in need of non-pastoral counseling to a licensed professional counselor.

In December 1990, Mullanix, a member of CVBC, began seeing Baucum for marital counseling. In February 1991, CVBC hired Sanders as an administrative secretary, with Baucum as her immediate supervisor. Shortly thereafter, Sanders, like Mullanix, began seeing Baucum for marital counseling.

Mullanix and Sanders each began this counseling at Baucum's invitation after he represented that he was qualified by education and experience to provide marriage counseling. They believed that Baucum was authorized by CVBC to provide marital counseling, in part because he told each of them that he counseled other women at CVBC. The jury found that Baucum entered into fiduciary relationships with the plaintiffs because he acquired influence and gained their trust and confidence during the course of these separate counseling relationships.

Although Baucum testified that he sometimes discussed scripture in his counseling sessions with Mullanix and Sanders, the jury found that the counseling he provided was "essentially secular" in nature. At trial, the plaintiffs presented evidence that Baucum breached his duties as a marriage counselor, not only by expressing love and affection for each of them and encouraging them both to express these feelings for him, but also by engaging in sexual intercourse with each of them on a number of occasions.

3

They also presented evidence that Baucum breached his fiduciary duties, not only by having sexual intercourse with them, but also by disclosing their confidences, including intimate details of their marriages and sexual histories.

In March 1991, CVBC hired Mullanix as a receptionist, and like Sanders, she was supervised by Baucum. The plaintiffs' sexual relationships with Baucum continued while he was their supervisor, and each plaintiff claims that on at least one occasion, she slept with him because of her belief that his behavior implied that she would be discharged if she did not. Further, after his counseling relationship with each plaintiff ended in September 1991, Baucum began both to criticize their work performance and discourage their hopes of promotions. He also engaged in behavior and conversation of a sexual nature that was unwelcome at that time.

On September 22, 1991, the plaintiffs informed one another of their relationships and problems with Baucum. Together they disclosed the existence of these relationships and Baucum's behavior to a member of CVBC's Personnel Committee (PC) on September 23, 1991. Baucum was forced to resign his position as MEA on September 25, 1991. On November 22, 1991, CVBC fired Mullanix and Sanders because they committed adultery in violation of church policies.

II.

After discovery, the district court granted CVBC's motion for summary judgment on the plaintiffs' Title VII and state law claims, thereby disposing of the entire case against CVBC. With respect to

4

their discriminatory discharge, hostile work environment, and quid pro quo claims, the district court held that the plaintiffs did not produce evidence indicating that CVBC's justification for their dismissals was pretextual or that CVBC knew or should have known of Baucum's alleged sexual harassment. Concerning their claims under Texas law, the district court held that there was no basis in the record for holding CVBC legally responsible for Baucum's misconduct under the doctrine of respondeat superior or for concluding that CVBC knew or should have known that Baucum presented a risk of harm to the plaintiffs. The district court then refused to allow the plaintiffs to supplement the summary judgment record with an untimely affidavit.

The district court granted partial summary judgment in favor of Baucum, but allowed the plaintiffs' claims that he committed malpractice as a marriage counselor and breached his fiduciary duties to go to trial. At the close of the evidence, the district court denied Baucum's motion for judgment as a matter of law and overruled his objection to the jury instructions. The jury found for the plaintiffs on each count and awarded them each $42,500 in punitive damages for Baucum's malpractice and $42,500 in punitive damages for his breach of his fiduciary duties. After the verdict, Baucum renewed his motion for judgment as a matter of law, again arguing that these claims were barred by the Free Exercise Clause of the First Amendment. This motion was denied, as was his claim that the punitive damages were excessive because they twice punished him for the same conduct.

5

III.

A.

On appeal, Baucum argues that because the First Amendment precludes judicial review of certain ecclesiastical disputes, his secular misconduct as the plaintiffs' counselor was not actionable because it occurred within two inherently ecclesiastical, rather than "purely secular," counseling relationships.[2] Specifically, he contends: 1) that he was entitled to judgment as a matter of law on the plaintiffs' claims that he committed malpractice as a marriage counselor and breached his fiduciary duties because his trial testimony—that he occasionally discussed scripture in his counseling sessions with the plaintiffs—demonstrated that the counseling he provided was not purely secular; 2) that in the alternative, the case should be remanded because he was entitled to a jury instruction that required the jury to find that the counseling he provided was purely secular in nature and thus a matter of judicial rather than ecclesiastical concern; or 3) that he was otherwise entitled to judgment as a matter of law because the evidence demonstrated that the plaintiffs' claims were in essence noncognizable claims for "clergy malpractice."[3] We

---

[2]     Baucum also argues that the plaintiffs were twice awarded punitive damages for his sexual misconduct and that their punitive damages awards should accordingly be reduced by half.  We reject this argument because it ignores the differences between the malpractice and fiduciary duty claims before the jury and because it mischaracterizes Baucum's misconduct as solely sexual in nature. The jury, therefore, did not necessarily twice award punitive damages for the same misconduct.

[3]     Baucum does not challenge the availability of these causes of action, nor the propriety of the jury instructions, under

disagree.

The First Amendment does not categorically insulate religious relationships from judicial scrutiny, for to do so would necessarily extend constitutional protection to the secular components of these relationships. Although Baucum's contention that the Free Exercise Clause prohibits the judiciary from reviewing the conduct of those involved in relationships that are not purely secular in nature might, if adopted, foster the development of some important spiritual relationships by eliminating the possibility of civil or criminal liability for participating members of the clergy, the constitutional guarantee of *religious* freedom cannot be construed to protect *secular* beliefs and behavior, even when they comprise part of an otherwise religious relationship between a minister and a member of his or her congregation. To hold otherwise would impermissibly place a religious leader in a preferred position in our society. *Cf. County of Allegheny v. ACLU*, 492 U.S. 573, 593-94 (1989) (interpreting the First Amendment to preclude the state from favoring religion over nonreligion). The district court, therefore, did not err by denying Baucum's motion for judgment as a matter of law nor by rejecting his proposed jury instructions, which would have required the jury to find that his counseling relationships with the plaintiffs were purely secular in order for it to find that his secular misconduct within these relationships was actionable. In fact, by instructing the jury to consider

Texas law.

whether Baucum's counseling, rather than his alleged misconduct, was "essentially secular" in nature, the district court provided Baucum with more than adequate protection under the Free Exercise Clause.

Contrary to Baucum's suggestion, this conclusion is entirely consistent with the Seventh Circuit's decision in *Dausch*, 52 F.3d 1425 (7th Cir. 1994). Like the plaintiffs in this case, the plaintiff in *Dausch* alleged that her minister "held himself out" to "be a duly qualified person engaged in providing psychological counseling" and committed "professional negligence" by engaging in "sexual relations" with her during counseling sessions. *Id.* at 1427-28. Foreshadowing Baucum's argument on appeal, the district court in *Dausch* dismissed this malpractice claim because it found that the plaintiff "`failed to adequately allege that Rykse's counseling was *purely secular*.'" *Id.* at 1431 (Ripple, J., concurring) (quoting the district court's order) (emphasis added). The Seventh Circuit, in a per curiam opinion, reversed and reinstated the plaintiff's malpractice claim. This disposition, therefore, supports our view that the First Amendment's respect for religious relationships does not require a minister's counseling relationship with a parishioner to be purely secular in order for a court to review the propriety of the conduct occurring within that relationship.[4]

---

[4] In fact, one member of the panel in *Dausch* expressly reached this conclusion. Judge Ripple, in his concurring opinion, noted that a plaintiff claiming "that the provider held himself out to be providing the services of a psychological counselor" would survive a motion to dismiss predicated upon the Free Exercise

8

Instead, the Free Exercise Clause protects religious relationships, including the counseling relationship between a minister and his or her parishioner, primarily by preventing the judicial resolution of ecclesiastical disputes turning on matters of "religious doctrine or practice." *Presbyterian Church in the U.S. v. Mary Elizabeth Blue Hull Memorial Presbyterian Church*, 393 U.S. 440, 449-50 (1969); *see also Thomas v. Review Bd. of Ind. Employment Security Div.*, 450 U.S. 707, 715-16 (1981) ("Courts are not arbiters of scriptural interpretation."). The sanctity of these relationships is further protected by other religious freedoms, including the limited right to engage in conduct that is rooted in religious belief. *Employment Div. v. Smith*, 494 U.S. 872, 877-78, 881 (1990); *Wisconsin v. Yoder*, 406 U.S. 205, 215 (1972). Under the evidence produced at trial, however, neither of these constitutional protections prevents Baucum from being held liable for his misconduct as a marriage counselor and a fiduciary who occasionally discussed scripture within the context of two otherwise secular counseling relationships with members of his congregation.

Because the judiciary must abstain from ecclesiastical disputes involving questions of doctrine or practice, state courts

---

Clause. *Dausch*, 52 F.3d at 1433. Although Judge Coffey also wrote separately to express his view that "some combination of spiritual and secular counseling remains shielded by the First Amendment," *id.* at 1429 (Coffey, J., concurring), this position cannot be interpreted to mean that a minister's counseling activities must be purely secular in order for any of his or her conduct to be actionable, for this view would conflict with the panel's decision to reverse the district court.

9

have "rejected uniformly" claims for "clergy malpractice." *Dausch*, 52 F.3d at 1432 (Ripple, J., concurring) (citing, for example, *Destefano v. Gabrian*, 763 P.2d 275 (Colo. 1988) (en banc)); *see, e.g.*, *F.G. v. MacDonell*, 696 A.2d 697, 703 (N.J. 1997). This is because

> such a claim requires definition of the relevant standard of care. Defining that standard could embroil courts in establishing the training, skill, and standards applicable for members of the clergy in a diversity of religions with widely varying beliefs. Furthermore, defining such a standard would require courts to identify the beliefs and practices of the relevant religion and then to determine whether the clergyman had acted in accordance with them.

*MacDonell*, 696 A.2d at 703. Thus, as these courts have correctly concluded, to recognize a claim for clergy malpractice would require courts to identify and apply the teachings of a particular faith, thereby making the judiciary responsible for determining what conduct and beliefs are part of a particular religion.

The First Amendment difficulties posed by a claim for clergy malpractice are not, however, present in this case because the duties underlying the plaintiffs' claims for malpractice by a marriage counselor and breach of fiduciary duties are not derived from religious doctrine. That is, because the jury found that Baucum held himself out as possessing the education and experience of a professional marriage counselor, his counseling activities with the plaintiffs were judged, not by a standard of care defined by religious teachings, but by a professional standard of care developed through expert testimony describing what a reasonably prudent counselor would have done under the same or similar

10

circumstances.  *See Dausch*, 52 F.3d at 1429, 1431, 1433 (allowing a parishioner to claim that her minister had a "`duty to possess and apply the skill and knowledge of a reasonably well qualified person providing psychological counseling'" because the minister "held himself out to be providing the services of a psychological counselor").[5]  Similarly, because the jury found that he entered into a fiduciary relationship with the plaintiffs, Baucum's conduct was to be consistent with "something stricter than the morals of the marketplace." *Meinhard v. Salmon*, 164 N.E. 545, 546 (N.Y. 1928).  But that "something" was "the finer loyalties exacted by courts of equity," *Johnson v. Peckham*, 120 S.W.2d 786, 788 (Tex. 1938), rather than the teachings of his faith.[6]  Thus, Baucum was not entitled to judgment as a matter of law on the grounds that these claims were barred by the constitutional principle that the

---

[5]     The district court instructed the jury that Baucum could not be held liable for malpractice unless "he made representations that he possessed the skill, knowledge or competence of a secular marital or mental health counselor."

[6]     Our holding is consistent with *Dausch*, which affirmed on both state law and First Amendment grounds the dismissal of a parishioner's breach of fiduciary duty claim against her minister. 52 F.3d at 1438 (Ripple, J., concurring).  Judge Ripple explained that Dausch's fiduciary duty claim was dismissed, in part, because she alleged, in "contrast to the other counts of [her] complaint," that "the breach of fiduciary duty occurred in the context of a pastor-parishioner relationship." *Id.*  That is, Dausch asserted that her pastor was her fiduciary, not because of his conduct as her counselor, but simply because of her status "as a member of the congregation . . . seeking counseling" and his status as her "pastor and counselor." *Id.*  In contrast, the jury in this case was instructed that the primary relationship between a minister and a parishioner is not a fiduciary one, and that Baucum could not be held liable for breaching his fiduciary duties unless he "acquired and abused" influence and "betrayed" confidences learned in a "relationship of trust."

11

judiciary must abstain from ecclesiastical disputes concerning questions of religious doctrine and practice.

Consequently, to invoke the protection of the First Amendment for conduct taking place within his counseling relationships with the plaintiffs, Baucum must assert that the specific conduct allegedly constituting a breach of his professional and fiduciary duties was rooted in religious belief. *See Smith*, 494 U.S. at 881; *Yoder*, 406 U.S. at 215; *see also Destefano*, 763 P.2d at 283-84 ("In the spiritual counseling context, the free exercise clause is relevant only if the defendant can show that the conduct that allegedly caused plaintiff's distress was in fact part of the belief and practices of the religious group."); *MacDonell*, 696 A.2d at 558 (holding that in order to be protected, the "conduct at issue must have been part of the beliefs and practices of the defendant's religion"). Baucum's First Amendment arguments before the district court, however, reflected the obvious truth that the activities complained of by the plaintiffs were not part of his religious beliefs and practices and he is not so brazen as to now contend otherwise. We therefore hold that he was not entitled to judgment as a matter of law on the ground that the plaintiffs' claims were barred by the First Amendment.[7]

### B.

Turning now to the plaintiffs' claims against CVBC, they

---

[7] Like the Colorado and New Jersey Supreme Courts, we do not decide whether the First Amendment *would* protect a minister asserting that his civil misconduct was rooted in religious belief. *See, e.g.*, *Destefano*, 763 P.2d at 284 (noting that this raises a "difficult First Amendment issue"); *MacDonell*, 696 A.2d at 560-61.

12

contend on appeal that they have met their burdens of production on summary judgment under Title VII because they adduced evidence showing that their discharges were discriminatory, that they were victims of quid pro quo sexual harassment for which they claim CVBC is automatically liable, and that they were each subjected to a hostile work environment of which CVBC should have been aware. The plaintiffs further assert that their evidence creates a genuine issue of material fact regarding CVBC's liability for Baucum's breach of his professional duties under general agency principles and the theory of ratification. They also argue that they have produced evidence justifying a finding that CVBC knew or should have known of the risks posed by Baucum's counseling and harassing activities. Finally, they claim that the district court abused its discretion by refusing to supplement the summary judgment record with an untimely affidavit. Having carefully reviewed the record in this case, we address and reject each of these contentions in turn.

The plaintiffs argue that their evidence creates a fact issue regarding whether their discharges were discriminatory. They did not, however, produce any evidence suggesting that they were fired because of their gender. In fact, the record shows that Baucum, who also committed adultery,[8] was forced to resign, and that CVBC's position against adultery was neutral with respect to sex, longstanding, and understood by both plaintiffs at the time they

---

[8] Baucum was married when he engaged in sexual intercourse with the plaintiffs.

engaged in sexual conduct with Baucum.

To survive summary judgment on their hostile work environment claims, the plaintiffs needed to produce evidence showing, among other things, "that [CVBC] knew or should have known of the harassment in question and failed to take prompt remedial action." *Jones v. Flagship Int'l*, 793 F.2d 714, 719-20 (5th Cir. 1986) (quoting *Henson v. City of Dundee*, 682 F.2d 897, 903-05 (11th Cir. 1982)). Because there is no dispute that CVBC took prompt remedial action upon learning of Baucum's misconduct on September 23, 1991, the plaintiffs were required to produce evidence that CVBC should have known of Baucum's behavior as a supervisor before it was disclosed in order to survive summary judgment on this claim.

The record, however, does not reveal a basis for finding that CVBC should have known that Baucum created a hostile work environment for Sanders and Mullanix. This is because the evidence relied on by the plaintiffs indicates, at most, that CVBC knew that Baucum had offended a few women by complimenting them on their appearances and hugging them. Evidence of this conduct, however, does not preclude summary judgment. *See. e.g.*, *Pfau v. Reed*, 125 F.3d 927, 939 n.10 (5th Cir. 1997) ("[I]n the cases that have held employers liable on the basis that the pervasiveness of sexual harassment implies constructive knowledge, the pervasive conduct *is the conduct of which the plaintiff complains*.").

To withstand summary judgment on their quid pro quo claims, the plaintiffs were required to produce evidence showing, among other things, that "the harassment complained of affected tangible

aspects of" their "compensation, terms, conditions, or privileges of employment." *Jones*, 793 F.2d at 722. In addition, they were required to develop evidence demonstrating that their "acceptance or rejection of the harassment" was "an express or implied condition to the receipt of a job benefit or the cause of a tangible job detriment." *Id.* The plaintiffs' own testimony—that they were subjected to mild criticism of their work and told that they would not be promoted to positions they knew did not exist—indicates that their jobs were not tangibly and detrimentally affected by their decisions to end their sexual relationships with Baucum. *See Farley v. American Cast Iron Pipe Co.*, 115 F.3d 1548, 1552-53 (11th Cir. 1997); *cf. Mattern v. Eastman Kodak* Co., 104 F.3d 702, 708 (5th Cir.) (noting, in the context of a retaliation claim, that "the verbal threat of being fired" and a "reprimand" are not "adverse employment actions" because they "lack . . . consequence"), *cert. denied*, 118 S. Ct. 336 (1997); *Bryson v. Chicago St. Univ.*, 96 F.3d 912, 916 (7th Cir. 1996) (noting that a tangible job detriment is a substantially adverse employment action, such as being transferred, relieved of responsibilities, denied the use of an office and telephone, or stripped of an official title). Further, there is no objective evidence in the record supporting the plaintiffs' claims that they engaged in sex with Baucum under an implied threat of discharge if they did not. *See Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 42 (5th Cir. 1996) (noting that "subjective speculation" will not establish a fact question in a discrimination case).

15

In order for the plaintiffs to have proceeded to trial on their claim that CVBC is liable under the doctrine of respondeat superior for Baucum's tortious conduct as one of the church's employees, they needed to produce evidence that Baucum's misconduct "f[e]ll within the scope of [his] general *authority* . . . and [was] in furtherance of [CVBC's] business and for the accomplishment of the object for which [Baucum] was hired." *Dieter v. Bakers Serv. Tools*, 739 S.W.2d 405, 407 (Tex. Ct. App. 1987) (emphasis added). The plaintiffs' evidence, however, failed to create a genuine issue of material fact regarding Baucum's actual or apparent authority to engage in counseling. In fact, the record indicates that Baucum did not have this authority because his job description and responsibilities as MEA indicate that he was not hired to provide counseling, that he knew that counseling was not part of his job description, that the MEA was not responsible for providing spiritual counseling, and that CVBC had a policy of referring non-pastoral counseling to a licensed professional counselor.[9]

The plaintiffs also contend that CVBC was liable for Baucum's misconduct as a counselor under the doctrine of ratification. *Prunty v. Arkansas Freightways, Inc.*, 16 F.3d 649, 652-53 (5th Cir.

---

[9] The plaintiffs also argue that CVBC is liable for Baucum's misconduct as a counselor under Section 219 of the Restatement (Second) of Agency, which provides for employer liability when the powers it entrusts to an employee aid that employee in breaching professional and fiduciary duties. As noted above, there is no basis in the record for finding that CVBC entrusted Baucum with marital counseling powers. Further, this provision of the Restatement has not been adopted in Texas and thus will not be recognized by this Court. *See, e.g.*, *Folks v. Kirby Forest Indus., Inc.*, 10 F.3d 1173, 1182 (5th Cir. 1994).

16

1994).  This doctrine imposes liability on an employer when that employer adopts, confirms, or fails to repudiate the unlawful acts of an employee of which the employer is aware.  *Id.*  There is, however, no evidence in the record indicating that CVBC was actually aware of Baucum's counseling activities.[10]

Aside from principles of agency, the plaintiffs also sought to hold CVBC liable on the theory that an employer that negligently "retains in his employ an individual who is incompetent or unfit for the job may be liable to a third party whose injury was proximately caused by the employer's negligence."  *Akins v. Estes*, 888 S.W.2d 35, 42 (Tex. Ct. App. 1994), *affirmed in part and reversed in part sub nom. Golden Spread Council, Inc. v. Akins*, 926 S.W.2d 287 (Tex. 1996) (reversing on grounds unrelated to the existence of his theory of negligence).  To withstand CVBC's motion for summary judgment on this negligence claim, the plaintiffs needed to show that CVBC knew or should have known that Baucum's conduct as a supervisor or counselor presented an unreasonable risk of harm to others.  As noted in conjunction with the plaintiffs' hostile work environment claims, however, the record does not indicate that CVBC should have known of Baucum's sexual harassment of Sanders and Mullanix.  Further, even if the plaintiffs' evidence suggested that CVBC should have known that Baucum was counseling the plaintiffs, there is simply no evidence that CVBC should have

---

[10]     Further, even if a principal can ratify the acts of an agent of which it should have been aware, there is no basis for finding that CVBC had constructive notice of Baucum's counseling activities.  *See infra*.

17

known that Baucum was likely to engage in sexual misconduct or disclose confidences as a marriage counselor.

The plaintiffs' final claim on appeal is that the district court abused its discretion by denying their motion to supplement the summary judgment record after summary judgment had been granted in favor of CVBC. This argument is without merit because the evidence was cumulative and did not support the plaintiffs' theory of constructive notice. Therefore, the district did not abuse its discretion in denying this untimely motion. *See, e.g.*, *Bernhardt v. Richardson-Merrell, Inc.*, 892 F.2d 440 (5th Cir. 1990).

## IV.

For the foregoing reasons, we AFFIRM.