IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 98-21046
Summary Calendar
_____

EMMI ROSS,

      Plaintiff-Appellant,

  v.

WALD MOVING AND STORAGE SERVICES INC, doing business as Wald
Mayflower; MAYFLOWER TRANSIT INC; RICHARD RYAN,

      Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Texas
(H-95-CV-4209)
_____

August 16, 1999

Before KING, Chief Judge, and DAVIS and JONES, Circuit Judges.

PER CURIAM:[*]

    Plaintiff-appellant Emmi Ross appeals the judgment of the
district court, which granted summary judgment to defendants-
appellees and dismissed Ross's discrimination and sexual
harassment claims.  She also challenges the district court's
denial of her motion to compel.  We affirm.

## I.  FACTUAL AND PROCEDURAL HISTORY

    On April 27, 1992, plaintiff-appellant Emmi Ross, an

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

African-American female, was hired by defendant-appellee Wald Moving and Storage Services, Inc. (Wald) to work as secretary to the Vice President/General Manager, who was then Suzanne Dobranski. At that time, Wald was a company-owned agency of defendant-appellee Mayflower Transit, Inc. (Mayflower). Ross worked for Dobranski until October 11, 1994 when Dobranski was replaced by defendant-appellee Richard Ryan.[1]

There is some dispute as to what happened next. According to Ross, one month after Ryan began work, Ryan promoted her to be his executive secretary. She contends that he also sexually harassed her. One month after her promotion, on December 15, 1994, Ross was terminated. According to Ross, her dismissal was due to her age, which was forty-four at the time, and to the fact that she refused Ryan's unwanted sexual advances. She contends that Ryan informed her that the reason for her termination was that he did not need a secretary, but that Ryan later hired Patty Mewis, a white female under forty years of age, to replace Ross.

According to defendants, Ryan was hired to improve the profitability of the business and, shortly after he began working, decided to reduce the number of employees to decrease costs. He therefore eliminated five positions over the course of a few weeks. Ross's position was one of those eliminated. Defendants contend that Ryan informed Ross that her position was being eliminated as a result of the company's reorganization,

---

[1] Wald, Mayflower, and Ryan will be referred to collectively as defendants.

that Ross was offered another job as the company's receptionist, which she refused, and that Ross also was offered a severance package, which she ultimately rejected. Defendants contend that nobody was hired to replace Ross, but that Ross's duties were distributed amongst several employees who already worked for the company.

On February 1, 1995, Ross filed a charge with the Equal Employment Opportunity Commission (EEOC) and with the Texas Commission of Human Rights. In June 1995, she received her right to sue letter and on August 23, 1995 filed her original complaint in the United States District Court for the Southern District of Texas, alleging discrimination in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634, 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. §§ 2000e to 2000e-17, and the Texas Commission on Human Rights Act (TCHRA), TEX. LAB. CODE ANN. §§ 21.001-21.306.

Defendants filed a motion for summary judgment on January 24, 1997. The district court granted the motion on February 25, 1997. Ross appealed, but this court dismissed the appeal for lack of jurisdiction on June 6, 1997. Ross thereafter filed a motion for relief from the judgment with the district court on November 20, 1997. On December 18, 1997, the district court reinstated Ross's case and denied defendants' motion for summary judgment as premature. Ross filed an amended complaint on April 6, 1998, adding common law causes of action and alleging that she had been denied the opportunity to apply for vacant positions

3

because of her race, that she had been subject to unwelcome sexual advances and a hostile work environment because of her sex, and that she had been terminated because of her age, race, and sex.

Defendants moved for summary judgment on all claims on July 30, 1998. The district court granted the motion and entered a final judgment in favor of defendants on October 20, 1998. In its opinion, the district court found that Ryan is not an employer as defined by Title VII, ADEA, or TCHRA and therefore cannot be individually liable to Ross. As to Ross's claim for discriminatory non-promotion, the district court found that Ross had failed to demonstrate an element of her prima facie case—that she was qualified for the position to which she allegedly was not allowed to apply—and further found that, even if she had made out a prima facie case, she had not demonstrated that defendants' reasons for not giving her the position were pretextual. As to Ross's discriminatory discharge claim, the district court found that she had not demonstrated that defendants' reasons for her termination were pretextual. As to Ross's sexual harassment claims, the district court found that she had failed to demonstrate that the incidents of sexual harassment she complained of were sufficiently severe or pervasive to rise to the level of a hostile work environment and that she had not made out a case of quid pro quo sexual harassment. Finally, the district court found that Ross's common law causes of action were barred by the applicable statutes of limitations. Ross timely

appealed.

## II. DISCUSSION

On appeal, Ross challenges the district court's grant of defendants' motion for summary judgment in all respects except for the dismissal of her common law causes of action and the district court's grant of summary judgment to defendants on Ross's claim that she was not given the opportunity to apply for vacant positions at Wald because of her race. We therefore do not address these claims. She also challenges the district court's denial of her motion to compel defendants to comply with certain discovery requests. We examine each of her arguments below.

### A. Motion to Compel

Ross argues that the district court erred by denying her motion to compel because the district court's failure to grant the motion hindered her ability to establish her case. We review a trial court's decision regarding discovery for abuse of discretion. See McKethan v. Texas Farm Bureau, 996 F.2d 734, 738 (5th Cir. 1993).

Ross challenges the district court's failure to compel compliance with two discovery requests. In request number twenty-one, Ross requested the production of documentation of Ryan's job description as vice president and general manager of Wald. Defendants objected to the request and asserted that there is no written job description for Ryan's position. The district court denied the request on that ground. We perceive no error in

5

this decision.

In request number twenty-two, Ross requested the production of documentary evidence "showing Patty Mawis [sic] was employed through Mayflower Transit" and further requested that if Mewis was not so employed, defendants produce evidence of how she was employed. Defendants objected to this request as vague and irrelevant, admitted that Mewis was employed at Wald at the same time as Ross, but argued that whether she was employed "through Mayflower Transit" was irrelevant. The district court denied Ross's request, finding it overly broad and vague. We do not find this to be an abuse of discretion. We therefore conclude that the district court did not abuse its discretion in denying Ross's motion to compel.

## B. Ryan's Liability as "Employer"

Ross next contends that the district court erred by granting summary judgment to defendants on Ross's claims against Ryan on the ground that Ryan is not an employer as defined by the applicable statutes. We review the district court's grant of summary judgment de novo and apply the same standards as the district court. See Ellison v. Connor, 153 F.3d 247, 251 (5th Cir. 1998).

Ross argues that the definition of employer under Title VII includes "any agent of [an employer]," 42 U.S.C. § 2000e(b), that Ryan is an agent of Wald, and that therefore she may sue Ryan individually. This argument is foreclosed by our circuit's precedent. In Grant v. Lone Star Company, B.L., 21 F.3d 649, 653

6

(5th Cir. 1994), we held that an individual may not be held liable under Title VII unless that individual otherwise meets the definition of employer.  See also Stults v. Conoco, Inc., 76 F.3d 651, 655 (5th Cir. 1996) (reaching same result in ADEA context).  We noted that the purpose of the "agent" provision in § 2000e(b) was merely to incorporate respondeat superior liability into Title VII.  See Grant, 21 F.3d at 652 (citing Miller v. Maxwell's Int'l Inc., 991 F.2d 583, 587 (9th Cir. 1993)).  Although Ross argues that Grant is inapplicable to her case, she cites no authority for this proposition.  Thus, the district court committed no error in granting summary judgment to Ryan.[2]

## C.  Sexual Harassment Claim

Ross alleges that during the course of her employment Ryan sexually harassed her.  According to Ross, the incidents began on Ryan's first day of employment when Ryan called Ross into a conference room and told her that he wanted her to think of their relationship "as if the two of us are dating each other."   When Ross asked Ryan what he meant by that statement, he responded that she should "figure it out."  Although Ross contends that the sexual harassment continued on a daily basis and included numerous sexual requests which she turned down, Ross describes only two other incidents.  In the first incident, Ross contends

---

[2]  Because the definition of "employer" found in TCHRA borrows its language from Title VII, we reach the same result with respect to Ross's TCHRA claim.  See TEX. LAB. CODE ANN. § 21.002(8); Austin State Hosp. v. Kitchen, 903 S.W.2d 83, 87–88 (Tex. App. – Austin 1995, no writ) (stating that Title VII decisions are relevant when construing TCHRA).

that Ryan intimidated her into going to a Houston Oilers football game with him, that he insisted that she drive to his hotel before the game to park her car there, that he took her to dinner before the game and tried to convey to others the impression that they were dating, and that he fondled her leg as he drove to the game. In the second incident, which occurred on December 2, 1994, shortly before Ross's termination, Ross contends that Ryan came into her office with his pants unzipped, stood in front of her as she was seated at her desk so that her eyes were at the level of his unzipped pants, and asked her to join him in his office for a drink. Ross refused and asked Ryan to zip his pants. This angered Ryan, who marched off without zipping his pants and left the office.

The district court held that as a matter of law the incidents complained of did not rise to the level of a hostile work environment because they were not sufficiently severe or pervasive. The district court also held that Ross had not established a case of quid pro quo harassment.

With respect to Ross's hostile work environment claim, for sexual harassment to be actionable, the conduct complained of must be of sufficient severity or pervasiveness to alter the conditions of the plaintiff's employment and create an abusive work environment. See Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of

8

employment." Faragher v. City of Boca Raton, 524 U.S. 775, 118 S. Ct. 2275, 2283 (1998) (internal quotation marks and citation omitted).

Although the few incidents about which Ross complains are certainly in poor taste, we agree with the district court that they do not rise to the level of an actionable hostile work environment. The incidents described are not severe and Ross has set forth no evidence other than a conclusory assertion to demonstrate that they occurred regularly. See Shepherd v. Comptroller of Pub. Accounts, 168 F.3d 871, 872-73, 874 (5ᵗʰ Cir. 1999) (holding no hostile work environment existed where over two-year period co-worker made numerous remarks about her appearance, stood over plaintiff's desk on several occasions in an attempt to look down her clothing, touched her arm on several occasions and rubbed his hands down her arm); Weiss v. Coca-Cola Bottling Co., 990 F.2d 333, 334-35, 337 (7ᵗʰ Cir. 1993) (finding no hostile work environment where supervisor asked employee for dates, called her "dumb blonde," put his hands on her shoulders several times, tried to kiss her, placed "I love you" signs in her work area, and attempted to take her to a bar).

As for Ross's claim that tangible employment actions resulted from her failure to acquiesce to Ryan's sexual harassment—namely, that she received a promotion but no corresponding pay raise, that she received reduced and menial responsibilities, and that she was eventually terminated—the district court found that Ross had presented no competent summary

judgment evidence to establish that any of Ryan's alleged threats resulted in a tangible employment action.  We agree.  In the first place, there is no evidence that Ryan made threats of a quid pro quo nature.  When asked at her deposition if Ryan had ever suggested to her that if she did not go along with his alleged sexual overtures that her job would be in jeopardy or that she would lose job benefits, she responded that he had not.

Even if Ryan had made such threats, there is no evidence connecting the tangible employment actions Ross complains of to her failure to accede to Ryan's demands.  Simply put, there is no evidence other than Ross's conclusory assertions to connect Ryan's alleged threats to the failure to give her a pay increase (if one was even supposed to accompany her promotion), to the reduction in Ross's job responsibilities, or to her eventual termination.  See Butler v. Yselta Indep. Sch. Dist., 161 F.3d 263, 268 (5th Cir. 1998) (finding no actionable quid pro quo harassment where there was no evidence of connection between challenged employment action and harassment); Sanders v. Casa View Baptist Church, 134 F.3d 331, 339 (5th Cir.) (stating that to establish quid pro quo claim plaintiff is required to develop evidence demonstrating that acceptance or rejection of harassment is cause of tangible job detriment), cert. denied, 119 S. Ct. 161 (1998).  Thus, the district court did not err in granting summary judgment to defendants on Ross's hostile work environment and quid pro quo sexual harassment claims.

**D.  Discriminatory Discharge**

To establish a case of discriminatory discharge under either Title VII or ADEA, the plaintiff is first required to satisfy the elements of a prima facie case under the applicable statute.  See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 113 S. Ct. 2742, 2746-47 (1993); Rhodes v. Guiberson Oil Tools, 75 F.3d 989, 992 (5th Cir. 1996) (en banc).  Under Title VII, a prima facie case consists of a showing that the plaintiff is a member of the protected class, that she was qualified for the position from which she was discharged, that she was discharged, and that the employer filled the position after her discharge with someone outside the protected class.  See Hicks, 113 S. Ct. at 2747.  To establish a prima facie case under ADEA, the plaintiff must show that she was discharged, that she was qualified for the position, that she was within the protected class at the time of her discharge, and that she was either replaced by someone younger or otherwise discharged because of age.  See Bodenheimer v. PPG Indus., Inc., 5 F.3d 955, 957 (5th Cir. 1993).  Once the plaintiff has established a prima facie case, the burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for the termination.  See Hicks, 113 S. Ct. at 2747; Rhodes, 75 F.3d at 992-93; Bodenheimer, 5 F.3d at 957.  If the defendant satisfies this burden, the plaintiff must prove by a preponderance of the evidence that the defendant's reasons are pretextual and that discrimination actually motivated the termination.  See Hicks, 113 S. Ct. at 2747-48; Rhodes, 75 F.3d

11

at 993-94; Bodenheimer, 5 F.3d at 957.[3]

Ross contends that the district court erred by granting summary judgment to defendants on her claim of discriminatory discharge. She argues that she adequately rebutted defendants' articulated reason for her discharge--that Ryan discharged her as part of a company restructuring—with the affidavit of Lasca Hopkins-Boltz. According to Hopkins-Boltz's affidavit, she was instructed to write a memorandum, after attending the meeting in which Ross was discharged, that contained certain facts that she did not recall from the meeting. Ross thus contends that there is an issue of fact concerning whether defendants' reasons for her termination were true. This, however, is not enough for Ross to prevail.

Assuming that Ross has established the elements of her prima facie case, and assuming that she has demonstrated that the reasons defendants gave her for her termination were false, Ross still has not met her burden of establishing that defendants' reasons were a pretext for discrimination and that it was either sex, race, or age discrimination that actually motivated defendants. See Hicks, 113 S. Ct. 2747-48; Rhodes, 75 F.3d at 994; Bodenheimer, 5 F.3d at 957. We agree with the district court that the evidence that Ross's termination was motivated by her sex, race, or age is sparse to nonexistent and that a reasonable fact finder could not infer from the evidence on the

---

[3] The same evidentiary framework applies to claims brought under § 1981. See Patterson v. McLean Credit Union, 491 U.S. 164, 186 (1989).

12

record that discrimination lies behind the termination.  Thus, Ross's claim for discriminatory discharge fails and the district court did not err in granting defendants' motion for summary judgment.

### III.  CONCLUSION

For the foregoing reasons, we AFFIRM the district court's denial of Ross's motion to compel and AFFIRM in its entirety the judgment of the district court granting summary judgment to defendants.