# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-05-00781-CV

**Alegria Olivarez, Appellant**

**v.**

**The University of Texas at Austin, Appellee**

FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT
NO. GN002440, HONORABLE WILLIAM E. BENDER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Alegria Olivarez sued her former employer, the University of Texas at Austin (UT-Austin), alleging discrimination based on national origin and retaliation. *See* Tex. Lab. Code Ann. §§ 21.051, .055, .110 (West 2006). UT-Austin filed a plea to the jurisdiction asserting that Olivarez's suit was barred because she did not file an administrative complaint with the Texas Commission on Human Rights (TCHR)[1] within the 180-day statute of limitations. *See id.* § 21.202(a) (West 2006). The trial court granted the plea, and Olivarez appeals. We affirm.

## Factual Background

Olivarez is a Filipino-American woman who was employed as an accountant with UT-Austin's College of Fine Arts. On January 11, 1999, she received a letter informing her of her

---

[1] Such administrative complaints are now filed with the Texas Workforce Commission. *See* Tex. Lab. Code Ann. § 21.0015 (West 2006).

proposed termination due to "continued unsatisfactory work performance and . . . failure to follow instructions provided by [her] supervisor." Olivarez was terminated on January 15, 1999, and she filed an administrative complaint with the TCHR on April 2, stating that she was "subjected to different terms and [conditions] of employment than similarly-situated Anglo/Caucasian employees, as regards to discipline," and discriminated against because of her national origin. Olivarez alleged that (1) her assignments were changed more often than similarly-situated colleagues; (2) she was told she had to provide medical records if she took more than three days of sick leave, but Caucasian employees were not required to do the same; (3) in July 1998, her supervisor threatened to terminate her employment; (4) in July 1998, she received a negative performance evaluation that eliminated her "chances of receiving a merit increase," while similarly situated Caucasian employees received high ratings and "very high merit increases"; (5) in August 1998, she was reprimanded for failing to follow directives, but a "similarly situated Anglo/Caucasian employee did not follow a directive and was not reprimanded"; and (6) in September 1998, she began to receive counseling memos and reprimands after speaking to UT-Austin's Equal Employment Opportunity Office. Olivarez stated that the date of the discriminatory conduct occurred on January 15, 1999, when she was terminated, and did not assert that the discrimination was a "continuing action."

On August 21, 2000, Olivarez sued UT-Austin, asserting that UT-Austin had engaged in unlawful employment practices and asserting claims under sections 21.051, 21.055, and 21.110 of the labor code. *See id.* §§ 21.051 (discrimination in compensation or terms, conditions, or privileges of employment or by depriving employee of employment opportunity or affecting employee's status), .055 (retaliation), .110 (discrimination based on national origin). She alleged

2

she was "the recipient of disparate and discriminatory treatment" and complained of "the English-only rule, disparate treatment, and the discriminatory and retaliatory practices of her employer." Olivarez alleged that between November 1996 and October 1998, she suffered twenty-one instances of improper conduct at the hands of her supervisors and co-workers and that she was discriminated against "on the basis of her language and the way she spoke English" and was told not to speak in Tagalog or "to allow anyone in the work place to hear her speak in her native tongue," a restriction placed only upon Olivarez as the only non-native English speaker in the office. UT-Austin filed a plea to the jurisdiction asserting that Olivarez had not complied with all jurisdictional prerequisites to filing an employment-discrimination claim because she had not timely filed an administrative complaint with TCHR as required by statute. The trial court granted UT-Austin's plea to the jurisdiction and dismissed Olivarez's suit with prejudice.

**Standard of Review**

On appeal, Olivarez complains that the trial court erred in granting UT-Austin's plea to the jurisdiction. She contends that not until she received her termination letter did limitations begin to run, her TCHR filing was timely, and the trial court had jurisdiction over her suit.

Subject-matter jurisdiction is a question of law, and we review de novo a trial court's decision on a plea to the jurisdiction. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998). We look to the pleadings and any evidence necessary to determine the jurisdictional issue. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). To sue for unlawful employment practices, a plaintiff must have filed an administrative complaint with the TCHR "not later than the 180th day after the date the alleged unlawful employment practice occurred."

3

Tex. Lab. Code Ann. § 21.202(a). The timely filing of an administrative complaint is a mandatory and jurisdictional prerequisite to filing suit. *Specialty Retailers, Inc. v. DeMoranville*, 933 S.W.2d 490, 492 (Tex. 1996); *Texas Parks & Wildlife Dep't v. Dearing*, 150 S.W.3d 452, 458 (Tex. App.—Austin 2004, pet. denied). Given that Olivarez filed her administrative complaint on April 2, 1999, she must have pleaded a prima facie case of discrimination based on an act that took place on or after October 4, 1998. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000); *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 353 (5th Cir. 2001) (elements of prima facie racial discrimination claim are (1) employee belongs to protected group, (2) employee was subjected to unwelcome harassment, (3) harassment was based on race, (4) harassment affected term, condition, or privilege of employment). Because the Texas Commission on Human Rights Act is modeled after federal civil rights law, "we look to analogous federal precedent for guidance when interpreting the Texas Act." *NME Hosps., Inc. v. Rennels*, 994 S.W.2d 142, 144 (Tex. 1999).

**Discussion**

Olivarez does not dispute that she was required to file her complaint within 180 days of events that she knew or should have known were discriminatory. Rather, she asserts that because she first learned of the "full, complete and entire basis" of UT-Austin's discrimination on January 15, 1999, when she received her termination letter, under the doctrine of continuing violation, limitations were tolled and her April 2 TCHR filing was timely. The essence of her argument, then, is that the letter of termination gave her notice of UT-Austin's discriminatory conduct. We disagree.

The doctrine of continuing violation, which may be applied "under limited circumstances," relieves a plaintiff from proving that all of the alleged acts of discrimination

4

occurred within the filing period provided she can show "a series of related acts, one or more of which falls within the limitations period." *Celestine*, 266 F.3d at 351. A plaintiff seeking to rely on the doctrine must show an organized scheme leading up to and including a violation within the limitations period and that the cumulative effect of the discriminatory practices, rather than any one discrete incident, gives rise to the cause of action. *Id.* at 352 (quoting *Huckabay v. Moore*, 142 F.3d 233, 239 (5th Cir. 1998)). In determining whether a continuing violation exists, we ask whether the alleged acts "involve the same type of discrimination, tending to connect them in a continuing violation," whether the alleged acts recurred or were "more in the nature of an isolated work assignment or incident," and whether the alleged act has "the degree of permanence which should trigger an employee's awareness of and duty to assert" her rights. *Id.* A one-time event such as termination, refusal to hire or promote, or demotion is a discrete adverse action that "cannot be lumped together with the day-to-day patter of racial harassment" and cannot be saved by the continuing-violation doctrine. *Huckabay*, 142 F.3d at 240 ("unlike the cumulative effect of the petty annoyances of daily harassment, demotion is the sort of discrete and salient event that should put an employee on notice that a cause of action has accrued").

First, we examine Olivarez's petition to determine what claims she asserts against UT-Austin. Olivarez alleged in her petition that she was "the recipient of disparate and discriminatory treatment" and that she was complaining of "the English-only rule, disparate treatment, and the discriminatory and retaliatory practices of her employer." She alleged twenty-one specific instances of discriminatory practices and stated that Caucasian employees were not subjected to the same conduct or requirements. Following her list of twenty-one date-specific incidents, Olivarez also made other allegations of discrimination, including that her supervisor improperly

5

commented on her Filipino-style blouse, that Olivarez was excluded from meetings, and that she was told she would have to pass a CPA exam to earn a raise. However, Olivarez did not provide dates or even a range of dates for those alleged incidents.[2] Timeliness of filing is a jurisdictional element of a discrimination claim, *see DeMoranville*, 933 S.W.2d at 492, and a conclusory allegation of misconduct will not support a claim of employment discrimination, *see Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985) (plaintiff cannot establish prima facie case with "conclusory allegations of discrimination, absent any concrete particulars"). Because she provided absolutely no factual allegations of even an approximate date on which those alleged acts occurred, we will not consider the undated allegations in our analysis and will limit our consideration to Olivarez's claims for discrete acts of alleged discriminatory conduct.

Although Olivarez argues that the time should run from the date she received her termination letter, she did not allege that her termination was one of the discriminatory acts.[3] Of the twenty-one allegations of discrimination, only an October 1998 reprimand for having a cluttered desk occurred within 180 days of Olivarez's administrative filing on April 2, 1999. The reprimand may only be the basis of Olivarez's suit if the reprimand was an actionable instance of discrimination.

---

[2] In each paragraph making those undated allegations, she stated, "This conduct constituted a contribution to a racially hostile working environment and discrimination."

[3] Further, Olivarez was informed no later than September 1998 that her supervisor was taking steps to terminate her employment. When a discriminatory act is committed but then employment continues for some time after the incident, a plaintiff may not "use a termination that fell within the limitations period to pull in the time-barred discriminatory act." *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002); *see Delaware State College v. Ricks*, 449 U.S. 250, 257 (1980) (continuity of employment, without more, will not prolong cause of action for employment discrimination)

To state an actionable discrimination claim, a plaintiff "must do more than simply demonstrate that [her supervisor] was a rude or uncivil boss." *Webb v. Cardiothoracic Surgery Assocs. of N. Tex., P.A.*, 139 F.3d 532, 539 (5th Cir. 1998). Instead, to be actionable, "an adverse employment action must be 'tangible' or 'material.'" *Brierly v. Deer Park Union Free Sch. Dist.*, 359 F. Supp. 2d 275, 294 (E.D.N.Y. 2005) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). "[A] 'bruised ego,' a 'demotion without change in pay, benefits, duties, or prestige,' or 'reassignment to [a] more inconvenient job' are all insufficient to constitute a tangible or material adverse employment action." *Id.* at 295 (quoting *Ellerth*, 524 U.S. at 761); *see Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (teasing, offhand comments, or isolated incidents that are not extremely serious do not amount to discriminatory changes in terms and conditions of employment); *Sanders v. Casa View Baptist Church*, 134 F.3d 331, 339 (5th Cir. 1998) ("plaintiffs' own testimony—that they were subjected to mild criticism of their work and told that they would not be promoted to positions they knew did not exist—indicates that their jobs were not tangibly and detrimentally affected"); *Beaumont v. Texas Dep't of Crim. Justice*, 468 F. Supp. 2d 907, 921 (E.D. Tex. 2006) (quoting *Huckabay*, 142 F.3d at 241) (general allegations that supervisor "was not as nice to [plaintiffs] as to others do not satisfy [plaintiffs'] burden"). As a matter of law, being reprimanded for having a cluttered desk does not amount to a tangible or material adverse employment action. Olivarez did not allege an actionable instance of discrimination occurring within the filing period.

Olivarez argues that the continuing violation doctrine should apply to allow her to refer back to events that occurred more than 180 days before she filed her TCHR complaint. Under the continuing violation doctrine, however, Olivarez has the burden of showing that she suffered discrimination "both prior and during the filing period, that the incidents of harassment were related,

7

and that the harassment was pursuant to an organized scheme." *Celestine*, 266 F.3d at 353 & n.2; *see Cooper-Day v. RME Petroleum Co.*, 121 S.W.3d 78, 86 (Tex. App.—Fort Worth 2003, pet. denied). As we have said, the October 1998 reprimand does not rise to the level of actionable discrimination, *see Ellerth*, 524 U.S. at 761, nor has Olivarez alleged or shown an "organized scheme" of related acts of harassment, *see Celestine*, 266 F.3d at 353. The trial court did not err in dismissing Olivarez's claims of discrete acts of discrimination.

We recognize that Olivarez referred in her petition to "a racially hostile working environment." However, as we have noted, in those portions of her petition, she provided no allegations about any time frame that could provide a jurisdictional basis. Further, her administrative complaint asserted disparate treatment, not that she had been subjected to a hostile work environment,[4] and her petition alleged that she was treated differently than her non-Filipino colleagues, which is a claim for disparate treatment. *See Brierly*, 359 F. Supp. 2d at 293 (quoting *Lester v. Natsios*, 290 F. Supp. 2d 11, 32-33 (D.D.C. 2003)) ("'[D]iscrete acts constituting discrimination or retaliation claims' must be kept conceptually distinct from hostile work environment claims, which 'must be based on severe and pervasive discriminatory intimidation or insult'"); *Parker v. State of Del. Dep't of Pub. Safety*, 11 F. Supp. 2d 467, 475 (D. Del. 1998) ("[T]he dangers of allowing standard disparate treatment claims to be converted into a contemporaneous hostile work environment claim are apparent. Such an action would significantly blur the distinctions between both the elements that underpin each cause of action and the kinds of

---

[4] A "crucial element" of a discrimination claim is the plaintiff's allegation of facts in her administrative complaint, which we construe "somewhat broadly." *Bartosh v. Sam Houston State Univ.*, 259 S.W.3d 317, 322 (Tex. App.—Texarkana 2008, pet. filed).

8

harm each cause of action was designed to address."). Olivarez did not plead the elements of or state that she was suing for hostile work environment, *see Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (hostile work environment plaintiff must show discriminatory conduct that so permeated workplace as to alter conditions of employment and create abusive work environment), and instead asserted disparate treatment based on discrete incidents. A plaintiff "cannot rely on a hostile work environment claim to salvage an otherwise time-barred discrete discrimination claim actionable on its own." *Texas Dep't of Crim. Justice v. Young*, No. 09-07-00635-CV, 2008 Tex. App. LEXIS 7350, at *11 (Tex. App.—Beaumont Oct. 2, 2008, no pet.) (mem. op.) (citing *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)).

Further, Olivarez asserts that her termination is the date from which limitations run because she did not realize until then that she had been discriminated against,[5] which is inconsistent with a claim that she endured harassment so pervasive and severe as to unreasonably interfere with or alter the conditions of her employment. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986) (quoting 29 C.F.R. § 1604.11(a)) (harassment rises to level of hostile work environment if employer's conduct unreasonably interferes with plaintiff's work performance or creates hostile, intimidating, or offensive work environment); *Beaumont*, 468 F. Supp. 2d at 918 (quoting *Walker v. Thompson*, 214 F.3d 615, 626 (5th Cir. 2000)) (hostile environment plaintiff must show racially discriminatory conduct so severe or pervasive as to alter conditions of employment).

---

[5] Olivarez argues that the pre-October 1998 incidents seemed to be "random and isolated events" until she received her termination letter, when she "reflect[ed] and examine[ed] the totality of" the events and "learned of the full, complete and entire basis" of UT-Austin's discrimination.

However, even if we were to construe Olivarez's pleadings as asserting a hostile work environment claim, in addition to claims of discrete instances of discrimination, her administrative complaint was not timely filed.

If an act contributing to a hostile environment claim occurs within the filing period, "the entire time period of the hostile environment may be considered." *Morgan*, 536 U.S. at 117. "In determining whether an actionable hostile work environment claim exists, we look to 'all the circumstances,' including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.* at 116 (quoting *Harris*, 510 U.S. at 23); *see Faragher*, 524 U.S. at 787-88; *Vinson*, 477 U.S. at 67; *Beaumont*, 468 F. Supp. 2d at 918.

Olivarez was terminated in January 1999, and although she argues that she did not learn until she received her termination letter that she had been discriminated against, she did not contend in her pleadings that the termination was a discriminatory act. More important, "[t]ermination does not qualify as a predicate act supporting the hostile-work-environment claim; termination is not itself harassing conduct." *Bartosh v. Sam Houston State Univ.*, 259 S.W.3d 317, 324 (Tex. App.—Texarkana 2008, pet. filed); *see also Cooper-Day*, 121 S.W.3d at 86 (plaintiff must show organized scheme such that cumulative effect of discrimination, not any discrete occurrence, gives rise to claim; assertion of discrete instance of discrimination such as termination does not sufficiently raise issue as to continuing violation).

Thus, as in our earlier discussion, only the October 1998 reprimand for having a cluttered desk fell within 180 days of Olivarez's TCHR filing. First, we note that Olivarez did not

state that the October reprimand contributed to a hostile work environment, only that "[t]his conduct did not occur to the Caucasian employees." Further, as discussed earlier, the event as alleged cannot be considered harassment. A reprimand for having a messy desk is not of the severe character that will support a hostile work environment claim. *See Vinson*, 477 U.S. at 65, 67 (quoting 29 C.F.R. § 1604.11(a)) (harassment rises to level of hostile work environment if it unreasonably interferes with work performance or creates intimidating, hostile, or offensive environment; "not all workplace conduct that may be described as 'harassment' affects a 'term, condition, or privilege' of employment"); *Beaumont*, 468 F. Supp. 2d at 918-21 (general allegations that colleague "was not as nice" to plaintiff does not satisfy burden; plaintiff must show intimidation, ridicule, or insults so severe or pervasive as to alter conditions of employment and create abusive work environment); *Pfeil v. Intecom Telecomms.*, 90 F. Supp. 2d 742, 749 (N.D. Tex. 2000) ("Incidental or occasional [racial] comments, discourtesy, rudeness, or isolated incidents (unless extremely serious) are not discriminatory changes in the terms and conditions of a worker's employment."); *Skinner v. Brown*, 951 F. Supp. 1307, 1322 (S.D. Tex. 1996), *aff'd*, 134 F.3d 368 (5th Cir. 1997) (quoting *Weller v. Citation Oil & Gas Corp.*, 84 F.3d 191, 194 (5th Cir. 1996)) ("conduct that only 'sporadically wounds or offends but does not hinder' an employee's performance is not actionable"). Therefore, even if Olivarez had alleged a claim for a hostile work environment, she did not file her administrative complaint within 180 days of a discriminatory act.**[6]**

---

**[6]** Although Olivarez makes passing reference to retaliation in her petition, she does not identify a specific, identifiable act of retaliation, much less one that occurred within the limitations period. Merely referencing "retaliation" will not suffice to bring such a claim.

Olivarez did not allege an instance of discrimination that fell within the statutory filing period and, therefore, the trial court did not err in granting UT-Austin's plea to the jurisdiction. We affirm the trial court's order dismissing Olivarez's claims.[7]

David Puryear, Justice

Before Justices Puryear, Pemberton and Waldrop

Affirmed

Filed: May 21, 2009

---

[7] Olivarez argues that by concluding that the 180-day limitation period ran before she filed her complaint, the trial court's ruling encourages the filing of frivolous claims by employees being overly protective of their rights. However, courts may not disregard a legislatively mandated jurisdictional prerequisite in order to reduce a risk of premature filings.

Olivarez further contends that since the TCHR did not dismiss her complaint as untimely, it must have believed her complaint was timely. *See* Tex. Lab. Code Ann. § 21.202(b) (West 2006). Although the TCHR's acceptance of a complaint was one factor supporting the trial court's finding of subject-matter jurisdiction in *Texas Parks & Wildlife Department v. Dearing*, we did not hold that the TCHR's acceptance was determinative of the filing's timeliness. *See* 150 S.W.3d 452, 459 (Tex. App.—Austin 2004, pet. denied) (considering TCHRA's acceptance of filing as factor supporting trial court's denial of plea and stating, "[W]hether Dearing knew definitively of the reclassification prior to September 1 is a fact question. . . . The only evidence in the record going to what Dearing knew prior to September 1 is slim and does not establish that Dearing knew of the reclassification at any time before it actually occurred, on September 1. We also conclude that it is unlikely any reasonable person in Dearing's position would have known prior to September 1 of the reclassification."). In this case, however, we have evidence and pleadings on which to rely in determining when limitations began to run and, thus, whether the TCHR accepted the administrative complaint does not mandate a finding of timeliness. Further, the TCHR's acts do not create jurisdiction in the trial court. *See Guevara v. H.E. Butt Grocery Co.*, 82 S.W.3d 550, 553 (Tex. App.—San Antonio 2002, pet. denied).

12