MEMORANDUM OPINION AND ORDER
 

 LINDSAY, District Judge.
 

 Before the court are Defendants’ Motion for Summary Judgment, filed May 8, 1998; Plaintiffs Response to Defendants’ Motion for Summary Judgment, filed June 1,1998; and Defendants’ Reply in Support of Their Motion for Summary Judgment, filed June 16, 1998. After careful consideration of the motion, response, reply, summary judgment record, and the applicable law, the court, for the reasons that follow, grants in part and denies in part Defendants’ Motion for Summary Judgment.
 

 I.
 
 Procedural and Factual Background
 

 Plaintiff Antoinette Pfeil (“Plaintiff’ or “Pfeil”) filed this action on June 16, 1997. Pfeil contends that Defendants Intecom, Inc. (“Intecom”), Intecom Acquisition, Inc. (“Intecom Acquisition”), and Samuel Stuckey (“Stuckey”) (collectively referred to as “Defendants”) caused her to be the victim of sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e
 
 et seq.
 
 Plaintiff also contends that Intecom and Intecom Acquisition failed to supervise and train Stuckey and brings a claim of negligent supervision against these two Defendants. Defendants deny that Plaintiff was sexually harassed or retaliated against while she was employed. Defendants contend that a legitimate, nondiscriminatory and nonretali-atory reason existed for Plaintiffs termination. In summary, Defendants contend that they are not liable to Plaintiff under Title VII or to her on her claim of negligent supervision.
 

 The court now sets forth the facts it relies on to decide the motion. Some facts are disputed; others are not in dispute. Where the facts presented are in dispute or there are different versions of the facts, they are presented and viewed in the light most favorable to Pfeil as the nonmovant. The court only states those facts which are relevant and material to the disposition of Defendants’ Motion for Summary Judgment.
 

 Pfeil was originally hired by Intecom, a Dallas-based telecommunications company, in March 1995 as a temporary secretarial employee who worked in the Customer Service Department. On June 15, 1995, Pfeil was hired on a permanent basis as a
 
 *745
 
 Secretary II in the Customer Service Department. Stuckey was employed as the Director of Customer Service at Intecom during 1995 and 1996. Pfeil was primarily assigned to work for Stuckey; however, she was also assigned to perform certain duties for the Manager of Customer Service and the Customer Service Field Managers.
 

 Plaintiff was terminated on June 4,1996. As expected, the parties dispute the reason Pfeil was terminated. Intecom contends that Pfeil was terminated because of her poor work performance. Pfeil contends that she was terminated in retaliation “for vocalizing discomfort with [a] sexual (sic) toned comment” made to her by Stuckey.
 

 In documents filed with the Equal Employment Opportunity Commission (“EEOC”) on May 23, 1996, Plaintiff cited one specific example of alleged sexual harassment by Stuckey. She states that Stuckey asked her to a “personal, private” lunch and that the request was made with a “sexual undertone.”
 
 See
 
 EEOC Intake Questionnaire and EEOC Sexual Harassment Affidavit of Plaintiff. In reference to the alleged sexual harassment, Plaintiff made statements that it had occurred “on and off since hiring” and that there were “indirect comments since [the] beginning of employment.” No specifics are given regarding any of these alleged comments or incidents in her EEOC filings.
 

 With respect to the “personal and private” lunch statement, Plaintiff avers that it was made during a conversation between her and Stuckey in which he informed her that he had just read an article on sexual harassment in
 
 USA Today.
 
 According to Pfeil, Stuckey laughed about the article. Pfeil states that the “personal and private” lunch comment came after the statement about the article on sexual harassment.
 

 Plaintiff also lists nine other instances of alleged sexual harassment. These incidents allegedly occurred during the first few months of 1996 and prior to the alleged request for the “personal and private lunch,” and are as follows:
 

 a. On one occasion, when she failed to shave her legs, Stuckey (who is an African-American) looked at Pfeil’s legs and said, “Black men don’t like it when their women don’t shave”;
 

 b. On another occasion, Stuckey told Pfeil that she was a “really pretty girl” and she should wear makeup or would look better with makeup;
 

 c. On another occasion, Stuckey told Pfeil “you know, you really look nice in that [tailored suit]” and that she would probably look “really good in miniskirts”;
 

 d. On another occasion, Stuckey asked Pfeil whether she had ever considered or would ever consider dating a Black man;
 

 e. On another occasion, Stuckey told Pfeil that she had nice long legs and asked her whether she had ever considered being a model;
 

 f. On an occasion when a group of Field Managers (male) came to Dallas and Pfeil was dressed up for the occasion, Stuckey told her she should not dress so nicely, because he could not keep them “away from her” or “off her”;
 

 g. On several (two to four) occasions, Stuckey made a “grunting” noise, one that Pfeil described as a “um-um-um” noise, when she entered the room. Plaintiff further described this noise as “the kind of noise made by construction workers when pretty women walk by”;
 

 h. On many occasions (more than 50% of the time), when Pfeil would enter a room, Stuckey would state at her and “check her from head to toe,” which made her “feel like he was undressing [her]”; and
 

 i. On occasion, Stuckey asked Pfeil whether she really wanted to get married and whether her fiancé was right for her.
 
 [1]
 

 
 *746
 
 II.
 
 Summary Judgment Standard
 

 Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter , of law. Fed.R.Civ.P. 56(c);
 
 Celotex Corp. v. Catrett, 477
 
 U.S. 317, 323-25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986);
 
 Ragas v. Tennessee Gas Pipeline Company,
 
 136 F.3d 455, 458 (5th Cir.1998). A dispute regarding’ a material fact is “genuine” if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party.
 
 Anderson v. Liberty Lobby, Inc., 477
 
 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party.
 
 Matsushita Elec. Indus. Co. v. Zenith Radio,
 
 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986);
 
 Ragas,
 
 136 F.3d at 458.
 

 Once the moving party has made an initial showing that there is no evidence to support the nonmoving party’s case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue.
 
 Matsushita,
 
 475 U.S. at 586, 106 S.Ct. 1348. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment.
 
 Eason v. Thaler,
 
 73 F.3d 1322, 1325 (5th Cir.1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence.
 
 See Forsyth v. Barr,
 
 19 F.3d 1527, 1533 (5th Cir.),
 
 cert. denied,
 
 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim.
 
 Ragas,
 
 136 F.3d at 458. Rule 56 does not impose a duty on the court to “sift through the record in search of evidence” to support Plaintiffs opposition to Defendants’ motion.
 
 Id., Skotak v. Tenneco Resins, Inc.,
 
 953 F.2d 909, 915-16
 
 &
 
 n. 7 (5th Cir.),
 
 cert. denied,
 
 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992). “Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment.”
 
 Anderson, 477
 
 U.S. at 248, 106 S.Ct. 2505. Disputed fact issues which are “irrelevant and unnecessary” will not be considered by a court in ruling on a summary judgment motion.
 
 Id.
 
 If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted.
 
 Celotex, 477
 
 U.S. at 322-23, 106 S.Ct. 2548.
 

 III.
 
 Analysis
 

 A. Plaintiffs Claims Against Defendants Stuckey and Intecom Acquisition
 

 Plaintiff, in her Second Amended Complaint, made claims against Stuckey and Intecom Acquisition. In her response to Defendants’ Motion for Summary Judgment, Pfeil did not brief or address her theory of liability regarding either of these Defendants or cite any summary judgment evidence supporting her claims against them. Pfeil has therefore abandoned the claims against Stuckey and Intecom Acquisition, and the court will therefore grant summary judgment in their favor.
 
 See Scales v. Slater,
 
 181 F.3d 703, 709 n. 5 (5th Cir.1999).
 

 Even if Plaintiff did not abandon her claims against Stuckey, he is not liable to Plaintiff regarding her Title VII claims.
 
 *747
 
 Title VII liability extends only to employers and defendants in their official capacities.
 
 Huckabay v. Moore,
 
 142 F.3d 233, 241 (5th Cir.1998);
 
 Caro v. City of Dallas,
 
 17 F.Supp.2d 618, 624 (N.D.Tex.1998). “A supervisor is considered an ‘employer’ under [TJitle VII if he wields the employer’s traditional rights, such as hiring and firing.”
 
 Huckabay v. Moore,
 
 142 F.3d. at 241. Plaintiff failed to establish that Stuckey
 
 in
 
 this case qualified as an employer by wielding such powers. Additionally, that power by a supervisor is necessarily exercised by a person who acts as an agent of the entity or business he represents, and because the wrongful acts are performed in his official capacity, any recovery against him must be against him in that capacity, not individually.
 
 Id; see Grant v. Lone Star Company,
 
 21 F.3d 649, 651-53 (5th Cir.),
 
 cert. denied,
 
 513 U.S. 1015, 115 S.Ct. 574, 130 L.Ed.2d 491 (1994). Accordingly, Stuckey is entitled to dismissal of Plaintiff’s Title VII claims against him personally.
 

 Likewise, even if Plaintiff has not abandoned her claims against Intecom Acquisition, it cannot be liable to Plaintiff under Title VII. According to the undisputed evidence, Intecom Acquisition was incorporated in 1995, was discontinued the same year and ceased to exist. Intecom Acquisition never had any employees and did not hire Plaintiff. Since Intecom Acquisition never hired Plaintiff, no employment relationship existed. An employment relationship is a prerequisite to Title VII liability. Since no employment relationship existed between Intecom Acquisition and Plaintiff, Intecom Acquisition does not meet the statutory definition of an employer under 42 U.S.C. § 2000e(b). Accordingly, Intecom Acquisition has no Title VII liability and is entitled to judgment as a matter of law.
 

 B. Plaintiffs Sexual Harassment Claim Against Intecom
 

 Title VII forbids an employer “to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual’s ... sex.” 42 U.S.C. § 2000e — 2(a)(1). Plaintiff may either prove her claim by establishing that a tangible employment action was taken against her because of her sex, or by establishing that a supervisor with immediate or successively higher authority discriminated against her because of her sex and created a hostile or abusive environment. See
 
 Butler v. Ysleta Independent School Dist.,
 
 161 F.3d 263, 268-69 (5th Cir.1998). A tangible employment action is one which “constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.”
 
 Burlington Industries, Inc. v. Ellerth,
 
 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 683 (1998). The term “tangible employment action” appears to be the functional equivalent of the Fifth Circuit’s terms “ultimate employment decision” and “adverse employment action.”
 
 See Mattern v. Eastman Kodak Co.,
 
 104 F.3d 702, 707 (5th Cir.),
 
 cert. denied,
 
 522 U.S. 932, 118 S.Ct. 336, 139 L.Ed.2d 260 (1997) (“Ultimate employment decisions include acts such as hiring, granting leave, discharging, promoting, and compensating.”).
 

 The court finds that Plaintiff’s sexual harassment claim must fail for two reasons: she has not set forth competent summary judgment evidence to create a genuine issue of material fact that she was subject to sexual harassment that culminated in a tangible employment action, or that the alleged harassment has altered a “term, condition, or privilege” of employment.
 

 The court first discusses whether the statements attributed to Stuckey constitute sexual harassment. The court has reviewed all comments and conduct attributed to Stuckey and concludes that the statements and conduct, as a matter of
 
 *748
 
 law, do not constitute sexual harassment. Although the conduct and statements can be described as flirtatious, and perhaps are indicative of Stuckey’s amorous inter-, est in Pfeil, they can hardly be characterized as rising to the level of sexual harassment. Some of the remarks certainly could be considered insensitive, boorish, uncouth, or even offensive
 
 [2]
 
 ; however, that one may be offended by a remark does not elevate the statement to the level of sexual harassment. Title VII is not a general civility code.
 
 See Faragher v. City of Boca Raton,
 
 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). Sexual harassment by definition means “[u]nwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature.”
 
 See Meritor Savings Bank, FSB v. Vinson,
 
 477 U.S. 57, 65, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)(citing 29 C.F.R. § 1604.11(a)(1985)).
 

 In this case, Stuckey never propositioned Pfeil for sex,
 
 cf. Burlington,
 
 524 U.S. 742, 748, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998);
 
 Harris v. Forklift Sys. Inc.,
 
 510 U.S. 17, 19, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993); he never had sex with her,
 
 cf. Meritor,
 
 477 U.S. at 60, 106 S.Ct. 2399; he never threatened her or in any way implied that her continued employment was conditioned on granting him sexual favors,
 
 cf. Burlington,
 
 524 U.S. at 748, 118 S.Ct. 2257; he never touched or fondled her,
 
 cf. Faragher,
 
 524 U.S. at 782, 118 S.Ct. 2275; he never commented on her sex life,
 
 cf. Farpella-Crosby v. Horizon Health Care,
 
 97 F.3d 803, 805 (5th Cir.1996); he never promoted a sexually charged environment,
 
 cf. Waltman v. International Paper Co.,
 
 875 F.2d 468, 470-71 (5th Cir.1989); and he never implied or stated that she was incompetent because of her sex,
 
 see Butler,
 
 161 F.3d at 269. For these reasons, the court holds that the comments and conduct of Stuckey, as a matter of law, do not constitute sexual harassment. Since sexual harassment did not exist, it necessarily follows that “unwelcome sexual harassment” is not present in this case, and Plaintiffs discharge on June 4, 1996, could not have been because of her sex.
 

 As previously stated, Pfeil may also establish her claim by showing that discrimination based upon sex has created a hostile or abusive working environment at Intecom.
 
 Faragher v. City of Boca Raton,
 
 524 U.S. 775, 786, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998);
 
 Shepherd v. Comptroller of Public Accounts,
 
 168 F.3d 871, 873 (5th Cir.),
 
 cert. denied,
 
 — U.S.-, 120 S.Ct. 395, 145 L.Ed.2d 308 (1999)
 
 (citing Meritor Savings Bank, FSB v. Vinson,
 
 477 U.S. 57, 66, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986));
 
 Butler,
 
 161 F.3d at 269. A plaintiff seeking to establish a hostile environment claim was formerly required to establish five elements: (1) that the employee belongs to a protected class; (2) that the employee was subject to unwelcome sexual harassment; (3) that the harassment was based on sex; (4) that the harassment affected a “term, condition, or privilege” of employment; and (5) that the employer knew or should have known of the harassment and failed to take prompt remedial action.
 
 Shepherd,
 
 168 F.3d at 873;
 
 Jones v. Flagship Int’l,
 
 793 F.2d 714, 719-20 (5th Cir.1986),
 
 cert. denied,
 
 479 U.S. 1065, 107 S.Ct. 952, 93 L.Ed.2d 1001 (1987).
 

 In
 
 Faragher
 
 and
 
 Burlington,
 
 the Supreme Court modified this test with respect to cases where the alleged harasser is a supervisor with immediate or higher authority over the harassed employee.
 
 Watts v. Kroger Co.,
 
 170 F.3d 505, 509 (5th Cir.1999). In such cases, the employee need only meet the first four elements of the test.
 
 Id.
 

 [3]
 

 In this case, Pfeil is not
 
 *749
 
 required to meet the fifth element because Stuckey, the alleged harasser, was her supervisor. Once a plaintiff makes this showing, the employer is subject to vicarious liability for the supervisor’s actions.
 
 Ellerth,
 
 524 U.S. at 765, 118 S.Ct. 2257;
 
 Faragher,
 
 524 U.S. at 807, 118 S.Ct. 2275. When the harassment has not culminated in a tangible employment action against the complaining employee, the employer may avail itself of the affirmative defense outlined in the above case law. This defense is comprised of two elements: (1) the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior; and (2) the plaintiff employee unreasonably failed to take advantage of any available preventive or corrective opportunities.
 
 Id.; Watts,
 
 170 F.3d at 509-10.
 

 To establish that the harassment affected a “term, condition or privilege” of employment, Pfeil must show that the discriminatory conduct was severe or pervasive enough to create an objectively hostile or abusive working environment.
 
 See Shepherd,
 
 168 F.3d at 873;
 
 Butler,
 
 161 F.3d at 269;
 
 Wallace v. Texas Tech Univ.,
 
 80 F.3d 1042, 1050 (5th Cir.1996)
 
 (citing Harris v. Forklift Sys., Inc.,
 
 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). Courts determine whether an environment is sufficiently abusive to be actionable under Title VII by reviewing all of the relevant circumstances, including the frequency of the conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with the employee’s work performance.
 
 Butler,
 
 161 F.3d at 269
 
 (citing Faragher
 
 524 U.S. at 787-88, 118 S.Ct. 2275);
 
 Nash v. Electrospace System, Inc.,
 
 9 F.3d 401, 404 (5th Cir.1993). Incidental or occasional sexual comments, discourtesy, rudeness, or isolated incidents (unless extremely serious) are not discriminatory changes in the terms and conditions of a worker’s employment.
 
 Butler,
 
 161 F.3d at 269 n. 3
 
 (citing Faragher,
 
 524 U.S. at 788, 118 S.Ct. 2275).
 

 Even when a hostile environment is shown, the plaintiff must establish that the workplace environment had the effect of altering the terms and conditions of her employment.
 
 Harris,
 
 510 U.S. at 21, 114 S.Ct. 367;
 
 Nash,
 
 9 F.3d at 403. Central to the court’s inquiry into a hostile environment claim is whether the alleged harasser’s actions have undermined the victim’s workplace competence, discouraged her from remaining on the job, or kept her from advancing in her career.
 
 Harris,
 
 510 U.S. at 22, 114 S.Ct. 367;
 
 Shepherd,
 
 168 F.3d at 874;
 
 Butler,
 
 161 F.3d at 270. Title VII is intended only to prohibit and prevent conduct “that is so severe and pervasive that it destroys a protected class member’s opportunity to succeed in the workplace.”
 
 Shepherd,
 
 168 F.3d at 874;
 
 Weller v. Citation Oil & Gas Corp.,
 
 84 F.3d 191, 194 (5th Cir.1996),
 
 cert. denied,
 
 519 U.S. 1055, 117 S.Ct. 682, 136 L.Ed.2d 607 (1997). Title VII’s overall goal of equality is not served if a claim can be maintained solely based on conduct that wounds or offends, but does not hinder an employee’s performance.
 
 Weller,
 
 84 F.3d at 194.
 

 Intecom contends that Pfeil’s sexual harassment claim must fail because the alleged harassment was not severe or pervasive enough to alter the terms and conditions of her employment. The court agrees that Plaintiff has not established this necessary element or created a genuine issue of material fact regarding this element of her sexual harassment claim.
 

 To be actionable, the challenged conduct must be both objectively offensive, meaning that a reasonable person would find the conduct hostile or abusive, and subjectively offensive, meaning that the victim perceived the conduct to be hostile or abusive.
 
 See Harris,
 
 510 U.S. at 21-22, 114 S.Ct. 367;
 
 Shepherd,
 
 168 F.3d at 874. As previously stated, some of the comments and conduct by Stuckey could definitely be considered boorish and even offensive; however, at best, each comment
 
 *750
 
 made by Stuckey was an epithet that engendered offensive feelings, which do not “sufficiently affect the conditions of employment.” Harr
 
 is,
 
 510 U.S. at 21, 114 S.Ct. 367.
 

 In
 
 Shepherd v. Comptroller of Public Accounts,
 
 168 F.3d 871, 873 (5th Cir.),
 
 cert. denied,
 
 — U.S. ---, 120 S.Ct. 395, 145 L.Ed.2d 308 (1999), the conduct was unquestionably sexual in nature and much more offensive than the comments in this case. The court held that Shepherd did not create a genuine issue of material fact that the harassment created a hostile or abusive working environment.
 
 Id.
 
 at 875. By way of illustration, the offensive conduct in
 
 Shepherd
 
 is as follows:
 

 According to Shepherd’s deposition, on one occasion Moore stood in front of Shepherd’s desk and remarked ‘your elbows are the same color as your nip-' pies.’ Shepherd testified that Moore remarked once ‘you have big thighs’ while he simulated looking under her dress. Shepherd claimed Moore stood over her desk on several occasions and attempted to look down her clothing. According to Shepherd, Moore touched her arm on several occasions, rubbing one of his hands from her shoulder down to her wrist while standing beside her. Shepherd alleged additionally that on two occasions, when Shepherd looked for a seat after coming in late to an office meeting, Moore patted his lap and remarked ‘here’s your seat.’
 

 Id.
 
 at 872. If the more offensive conduct in
 
 Shepherd
 
 does not constitute an abusive or hostile working environment, a reasonable jury could not conclude that the conduct and statements of Stuckey created an abusive or hostile working environment in this case.
 

 Moreover, as previously stated, Stuck-ey’s conduct was not sexual harassment. Stuckey never propositioned Pfeil for sex; he never had sex with her; he never threatened her in any way that implied her continued employment was conditioned on her granting him sexual favors; he never touched or fondled her; he never commented on her sex life; he did not promote a sexually charged environment; and none of his comments indicates that Pfeil was incompetent or unable to perform her assigned duties because of her sex. Nothing that Stuckey said or did was so extreme or severe that it prevented Pfeil from succeeding in the workplace or destroyed her opportunity to succeed in the workplace.
 
 See Weller,
 
 84 F.3d at 194. For these reasons, Pfeil has not established, or created a genuine issue of material fact, that her working environment was hostile or abusive.
 

 C. Plaintiffs Claim of Retaliation
 

 Pfeil has also brought a claim against Intecom for retaliation in violation of Title VII. In support of this claim, Pfeil states that she complained to her immediate supervisor, Sam Stuckey, on May 16, 1996, regarding his request for a “personal and private” lunch with her. According to Plaintiff, the request was made in a “sexually suggestive” manner. She further contends that the remarks were inappropriate and unwelcome and made her feel uncomfortable. According to Plaintiff, she not only complained to Stuckey but also to Sandra Swann (“Swann”), Director of Human Resources. Pfeil states that, as a result of complaining of Stuckey’s conduct, she was (1) denied access to Stuckey’s computer, telephone, confidential mail and his office when it was not occupied; (2) treated with hostility by Stuckey; (3) placed on probation or given a “final warning” regarding her performance on May 20, 1996; and (4) ultimately terminated on June 4, 1996, for complaining about sexual harassment to management. '
 

 To establish a
 
 prima facie
 
 case of retaliation, Pfeil must show that (1) she engaged in activity protected by Title VII; (2) Intecom took adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse employment action.
 
 Mattern v. Eastman Kodak Co.,
 
 104 F.3d 702,
 
 *751
 
 705 (5th Cir.),
 
 cert. denied,
 
 522 U.S. 932, 118 S.Ct. 836, 139 L.Ed.2d 260 (1997);
 
 Long v. Eastfield College,
 
 88 F.3d 300, 304 (5th Cir.1996);
 
 McMillan v. Rust College, Inc.,
 
 710 F.2d 1112, 1116 (5th Cir.1983). Under
 
 McDonnell Douglas Corp. v. Green,
 
 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), if the plaintiff can establish a
 
 prima facie
 
 case of retaliation, the burden shifts to the defendant to come forward with a legitimate, nondiscriminatory reason for the adverse employment action.
 
 See also Sherrod v. American Airlines, Inc.,
 
 132 F.3d 1112, 1122 (5th Cir. 1998). If the defendant advances a legitimate reason for the adverse employment action, the plaintiff must adduce sufficient evidence that would permit a reasonable trier of fact to find that the proffered reason is a pretext for retaliation.
 
 Id.
 
 Therefore, the ultimate issue is whether the employer unlawfully retaliated against the employee for engaging in protected activity. The ultimate issue in a retaliation case is whether the protected conduct was a “but for” cause of the adverse employment decision.
 
 Long, 88
 
 F.3d at 305 n. 4
 
 (citing McDaniel v. Temple Indep. Sch. Dist.,
 
 770 F.2d 1340, 1346 (5th Cir. 1985)). Even if an employee’s protected conduct is a “substantial element” in the employer’s decision to terminate an employee, no liability for retaliation will arise if the employee would have been terminated irrespective of the employee’s protected activity.
 
 Id. (citing Jack v. Texaco Research Ctr.,
 
 743 F.2d 1129, 1131 (5th Cir. 1984)). In other words, the employee must show that the adverse employment action would not have occurred “but for” the protected activity.
 
 Long,
 
 88 F.3d at 308.
 

 An employee has engaged in activity protected by Title VII if she has either (1) “opposed any practice made an unlawful employment practice” by Title VII or (2) “made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing” under Title VII. 42 U.S.C. § 2000e-3(a). The opposition clause of § 2000e-3(a) requires the employee to demonstrate that she had at least a “reasonable belief’ that the practice she opposed was unlawful.
 
 Payne v. McLemore’s Wholesale & Retail Stores,
 
 654 F.2d 1130, 1140 (5th Cir.1981). The court concludes that the evidence is sufficient to establish that Plaintiff reasonably believed that she was opposing an unlawful employment practice when she talked to management (Stuckey and Swann), even though the court has ruled that no sexual harassment occurred.
 

 To satisfy the “adverse employment action” prong of her
 
 prima facie
 
 case, Pfeil must show that Intecom took “ultimate employment action” against her.
 
 Mattern v. Eastman Kodak Co.,
 
 104 F.3d 702, 705-07 (5th Cir.),
 
 cert. denied,
 
 522 U.S. 932, 118 S.Ct. 336, 139 L.Ed.2d 260 (1997). Title VII focuses on ultimate employment decisions such as hiring, firing, granting leave, discharging, promoting, and compensating.
 
 Id.
 
 at 707;
 
 Dollis v. Rubin,
 
 77 F.3d 777, 782 (5th Cir.1995). The statute is not intended to address other employment-related decisions that may have some tangential effect on an ultimate employment decision but are not ultimate employment decisions in and of themselves.
 
 Id.
 
 The Fifth Circuit has provided numerous examples of employment actions which are not ultimate employment decisions with the purview of Title VII. In
 
 Mattem,
 
 the court held that hostility from fellow employees, having tools stolen, and the anxiety resulting therefrom were not ultimate employment decisions. 104 F.3d at 707. Denial of administrative complaints and internal grievances also do not meet the standard.
 
 Dollis,
 
 77 F.3d at 782. Changing an employee’s work schedule, hours, or increasing an employee’s workload are merely administrative decisions and do not constitute the type of ultimate employment decisions contemplated by Title VII.
 
 Benningfield v. City of Houston,
 
 157 F.3d 369, 377 (5th Cir.1998),
 
 cert. denied,
 
 — U.S. -, 119 S.Ct. 1457, 143 L.Ed.2d 543 (1999). Furthermore, while formal reprimands may be ultimate employment decisions, informal criticisms are not.
 
 Id.
 
 
 *752
 
 Placing Plaintiff on probation or giving her a “final warning” was not an adverse employment action as defined by applicable law and will not be considered by the court. Based upon this standard, the only adverse employment action that took place against Plaintiff was her discharge on June 4, 1996. Accordingly, Plaintiff has established the second element of a
 
 prima facie
 
 case.
 

 With respect to the third and final element, a casual connection between the protected activity and adverse action, the court, for the reasons that follow, believes that Pfeil has raised a genuine issue of material fact regarding causation. Pfeil has thus established a
 
 prima facie
 
 case of retaliation. The court, for the reasons that follow, also finds that Plaintiff has submitted sufficient evidence to raise a genuine issue of material fact as to whether poor performance, the legitimate, non-retaliatory reason stated by Intecom, was the real reason for her discharge.
 

 Some of the evidence regarding Plaintiffs claim may be questionable; however, such doubts regarding credibility or believability are not to be addressed by the court at the summary judgment stage.
 
 Carroll v. Metropolitan Ins. and Annuity Co.,
 
 166 F.3d 802, 804 (5th Cir.1999);
 
 Crowe v. Henry,
 
 115 F.3d 294, 298 (5th Cir.1997). There is certainly evidence in the record that management had concerns about Plaintiffs performance; however, these criticisms regarding Plaintiffs job performance were primarily brought to light by evidence acquired
 
 after
 
 she approached Stuckey, her supervisor, about the “personal and private” lunch comment. Except for the evaluation of Plaintiff for 1995 and an e-mail exchange between her and Dale Peterson in September 1995, no contemporaneous personnel or company documents are in the record regarding Pfeil’s performance. As a result of her evaluation for 1995, Pfeil received an “average” or “satisfactory” rating of “3” and a merit increase of three percent. Pfeil’s evaluation took place in April 1996. Given the temporal proximity of the evaluation and “satisfactory” rating that Defendant gave Plaintiff, the “personal and private” lunch comment, Pfeil’s conversation with Stuckey and Swann regarding the comment, Plaintiffs discharge on June 4, 1996, and the lack of any contemporaneous personnel or company records indicating performance or disciplinary problems with Pfeil, Pfeil has raised a genuine issue of material fact that she would not have been discharged “but for” her complaint to management regarding a comment which she believed to be inappropriate and made with a sexual undertone. A reasonable jury could conclude that, in light of this evidence, poor performance was a pretext for retaliation, and that poor performance was not the real reason for discharging Pfeil.
 

 Defendant contends that Plaintiff would have been fired solely for the pager incident; however, the facts surrounding this incident are not as concrete as Defendant would like the court to believe. Some of the evidence that Defendant cites is simply not susceptible of the interpretation that is ascribed to it. For example, Intecom states that Field Manager Harry Alecksy-nas (“Alecksynas”) sent Pfeil his pager and requested her to “immediately” secure a replacement pager, Defendants’ Motion for Summary Judgment at p. 22, and cites Plaintiffs deposition as a reference. The cited reference in Plaintiffs deposition
 
 does not
 
 state that Alecksynas requested Plaintiff to find him a replacement pager “immediately.” This reference in Inte-com’s motion simply overstates the evidence on this matter. This distinction is crucial because if the request was for immediate replacement and Plaintiff failed to act, Defendant would have been justified in discharging Plaintiff; however, Plaintiff provides sufficient evidence to raise a fact issue on this matter. Another example where the evidence regarding Pfeil’s performance is overstated is Intecom’s statement that Plaintiff “rudely interrupted” a conversation with Herbie Brooks and that
 
 *753
 
 Ms. Brooks “reprimanded” Plaintiff for the interruption. Defendants’ Motion for Summary Judgment at p. 7. Neither the word “rudely” nor “reprimanded” is used in the cited reference. Plaintiffs take on the incident, however, does not square with that of Defendants. In another instance, Intecom states that “[tjhroughout her employment, Plaintiff had difficulty dealing with her supervisors and co-workers.” Defendants’ Motion for Summary Judgment at p. 4. Defendant states that Plaintiff had disagreements with three supervisors and a secretary.
 
 Id.
 
 Plaintiff responds that “on occasion” she may have had some disagreements, which she characterizes as “misunderstandings,” with these individuals. Obviously, Plaintiff does not attach the same significance to these matters as does Defendant and disputes Defendant’s characterization of the incident. In other words, Plaintiff is stating that “disagreements” did not occur to the extent or in the manner Defendant describes them.
 

 , The evidence as a whole cited by Defendant, if believed by a jury, could support Plaintiffs discharge; however, it is impossible for the court to determine the import of such evidence solely by reviewing written testimony and documents. Such evidence should be evaluated and weighed by a jury, which can judge the credibility and demeanor of the witnesses. The true meaning and import of the testimony can only be determined by a jury, and a jury should resolve conflicting interpretations of the evidence. A reasonable jury could interpret the evidence as a whole differently and conclude that retaliation rather than poor performance, or the pager incident, was the real reason that Pfeil was discharged. Employers seldom leave direct evidence of retaliation.
 
 See Nowlin v. Resolution Trust Corp.,
 
 33 F.3d 498, 508 (5th Cir.1994). The court concludes that the circumstantial evidence presented by Pfeil and the inferences that could be reasonably drawn from that evidence are sufficient to raise a conflict in substantial evidence on the ultimate issue of retaliation because “reasonable and fair minded persons” could reach different conclusions on the issue of retaliation.
 
 See Rhodes v. Guiberson Oil Tools,
 
 75 F.3d 989, 993 (5th Cir.1996)(en banc). For this reason, summary judgment is not appropriate for Defendant on Plaintiffs retaliation claim.
 

 D. Plaintiffs Claim of Negligent Supervision
 

 Defendant Intecom contends that Plaintiffs claim for negligent supervision must be dismissed because it is preempted by the Texas Workers Compensation Act (“Act”), Tex. Lab.Code Ann. § 408.001 (Vernon 1996). The court agrees. The record contains no' evidence that Pfeil waived worker’s compensation benefits and chose to retain her common law and statutory remedies. As this claim is clearly one sounding in negligence, it is foreclosed by the Act.
 
 Ward v. Bechtel Corp.,
 
 102 F.3d 199, 204 (5th Cir.1997). Accordingly, summary judgment is appropriate for Intecom on this claim.
 

 IV.
 
 Miscellaneous Matters
 

 A. Presentation of Summary Judgment Evidence
 

 The court had extreme difficulty in wading through this motion because the parties were not totally forthcoming with respect to the presentation of the summary judgment evidence. In some instances, evidence or its meaning was overstated. The court has cited several examples of Defendant Intecom. With respect to Plaintiff, there are numerous instances where the evidence is speculative, conclu-sory, vague, and inadmissible hearsay. The court will not unnecessarily burden the record by listing each specific example; however, the court simply disregarded all evidence submitted by Plaintiff which fell into these categories. When this occurs, it unnecessarily delays the proper administration of justice. The court, therefore, fully expects the parties in the future to
 
 *754
 
 discuss any remaining matters with complete candor.
 

 B. Request to Supplement
 

 Pfeil in Plaintiffs Response to Defendants’ Motion for Summary Judgment (“Response”) requests the court to allow her to supplement the record because transcripts of certain deposition testimony are unavailable and because Plaintiff is “having difficulty coming up with the entire costs of these transcripts.... ” Response at p. 20. The court treats this request as one under Fed.R.Civ.P. 56(f) and denies it for two reasons. First, Plaintiff concedes that the information presented in the Response is sufficient to establish a genuine issue of material fact to deny the granting of summary judgment. The additional evidence is therefore unnecessary. Second, the additional information provides no assistance to the court in resolving the claims of sexual harassment, retaliation dr negligent supervision. The additional evidence is simply not relevant to the issues regarding sexual harassment or negligent supervision and will not cause the court to alter its ruling on these matters. Regarding the retaliation claim, the evidence is moot because the court has ruled that a genuine issue of material fact exists regarding this claim. For these reasons, Plaintiffs Request to Supplement is denied.
 

 Y.
 
 Conclusion
 

 For the reasons stated herein, Defendants’ Motion for Summary Judgment is granted in part and denied in part. Plaintiffs claims of sexual harassment and negligent supervision are hereby dismissed with prejudice. The only claim remaining for trial is Plaintiffs claim of retaliation. The court will set this case for trial by a separate order.
 

 [1]
 

 . These statements, for purpose of summary judgment, are accepted as true. The court
 
 *746
 
 ches the facts regarding Plaintiff’s claim for retaliation in a subsequent section of this opinion.
 

 [2]
 

 . A couple of the remarks could arguably be considered complimentary: specifically, the statement that Pfeil was "pretty” and the inquiry whether "she had ever considered being a model.”
 

 [3]
 

 . In cases where the alleged harasser is a coworker, rather than a supervisor, the full five-element test continues to apply.
 
 See Watts,
 
 170 F.3d at 509 n. 3;
 
 Williamson v. City of Houston,
 
 148 F.3d 462, 464 (5th Cir.1998).