**Karen PRIGMORE, Plaintiff,**

v.

**HOUSTON PIZZA VENTURES, INC. d/b/a PAPA JOHN'S PIZZA Defendant.**

**No. G–01–180.**

United States District Court, S.D. Texas, Houston Division. Galveston Division.

March 7, 2002.

David Alan Slaughter, Attorney at Law, Houston, for Karen Prigmore, plaintiffs.

David Anthony Scott, Jackson Lewis et al, Dallas, for Houston Pizza Ventures, Inc. dba Papa John's Pizza, defendants.

### ORDER GRANTING DEFENDANT HOUSTON PIZZA VENTURES, INC.'S MOTION FOR SUMMARY JUDGMENT

KENT, District Judge.

Plaintiff Karen Prigmore ("Prigmore") brings this lawsuit against her former employer, Defendant Houston Pizza Ventures, Inc. ("Houston Pizza") seeking damages for sexual harassment pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the Texas Commission on Human Rights Act, Tex. Labor Code § 21.001 et seq.,[1] and for intentional infliction of emotional distress pursuant to Texas common law. Now before the Court is Houston Pizza's Motion for Summary Judgment, filed February 11, 2002. After carefully reviewing Houston Pizza's Motion, Prigmore's Response to that Motion, the summary judgment evidence and the applicable law, the Court finds Houston Pizza's Motion for Summary Judgment meritorious and consequently, the Motion is hereby **GRANTED.**

### I.

Houston Pizza, the owner and operator of multiple Papa John's Pizza franchises in the greater Houston area, initially hired Prigmore in January 1999 as a delivery driver in its Galveston, Texas store. Prigmore was granted a promotion to assistant manager three months later and worked in that capacity at the Galveston store until October of 1999, at which time she requested a transfer to Houston Pizza's Texas City, Texas location. Houston Pizza complied with her request and Prigmore transferred to the Texas City Papa John's Pizza. Prigmore's salary and job responsibilities were identical before and after the transfer.

While working on November 13, 1999, Prigmore set out to deliver five pizzas. Prigmore delivered only one of these pizzas, however, and returned the other four pizzas as "bad ordered." At least one customer called to complain about not receiving his pizza that evening. Consequently, Prigmore received a written counseling the next day from Mike Rios ("Rios"), the Texas City store manager. In that counseling, Prigmore was cautioned to pay more attention to her job responsibilities and advised that any fur-

1. The Texas Commission on Human Rights Act ("TCHRA") is modeled after federal law for the purpose of executing the policies embodied in Title VII of the federal Civil Rights Act of 1964. See Tex. Labor Code § 21.001. As such, the Court views Prigmore's sexual harassment claim under Title VII and her sexual harassment claim under TCHRA as identical for all practical purposes. Consequently, the Court will analyze both claims simultaneously and the outcome of this analysis will apply with equal force to both causes of action.

ther problems could lead to disciplinary action, up to and including her termination. Prigmore signed the consultation memorandum and understood the nature of the action that had been taken against her.

On November 21, 1999, Prigmore was responsible for closing the Texas City store. At closing time that evening, Prigmore violated company policy by allowing Stephen Flowers, a delivery driver, to secure the store's bank bag in the safe.[2] The next day, Rios discovered that $100.00 was missing from the bank bag. When he confronted Prigmore with this discovery, Prigmore admitted to violating Houston Pizza's cash handling procedures. Consequently, Rios terminated Prigmore's employment. In Prigmore's termination paperwork, Rios provided the following explanation for his action: "November 22, the store was $100 short from night before. Subsequently, Karen was fired on 11/22 because of shortage." In response, Prigmore wrote that "I didn't steal that money" and "I honestly believe Stephen took [the] money," but she nevertheless agreed to pay back $100.00 to Houston Pizza "to please this company" and because she "enjoyed [her] job" and "loved working here." In her deposition, Prig-more candidly admitted that Mike Rios terminated her for "wrongfully handling cash."

Four months after her termination, Prigmore filed the instant suit against Houston Pizza. Prigmore belatedly alleges that while she was working for Houston Pizza, she was sexually harassed, subjected to a hostile work environment and terminated for pretextual reasons. Prigmore bases her harassment claim on comments and conduct allegedly directed towards her by Steve Buchanan, a Houston Pizza area manager. According to Prigmore, Buchanan (1) told her about a $500.00 per night hotel room in Houston five or six times; (2) commented on her husband's infidelity and asked if he was "treating her OK"; (3) asked if Prigmore "wanted to pay her husband back" and stated that "I won't tell, if you don't tell"; (4) remarked that Prigmore looked nice with shorts on; (5) tugged on the hemlines of her clothing twice; and (6) asked her to have a drink with him "a couple of times"; and (7) called Prigmore "babe," "gorgeous," "beautiful" and "sweetie." Prigmore also alleges that Buchanan called her numerous times, followed her "around like a puppy" and made her clean the baseboards of the store while in his presence.[3]

2. Houston Pizza's cash handling policy expressly states that "[i]f you have more that a $10.00 overage or shortage in your drawer or bank per shift you may be subject to immediate termination." Prigmore signed the policy on January 21, 1999. Above her signature, the following statement appears: "I am signing this policy because I have read it and completely understand it. I understand that any violation of the policy may result in termination." The Parties also agree that, pursuant to company policy, the closing manager is responsible for all the cash in the store at the end of the business day.

3. Given the pervasive nature of these allegations, the Court finds it more than curious that Prigmore never availed herself of the company's "Smart Start" policy for prevent-ing sexual harassment. This policy, which Prigmore admits to knowing word for word during her employment, instructs employees to report, fix or stop inappropriate conduct in the workplace. Prigmore understood that she was supposed to report any sexual harassment in the workplace to her supervisor, and, if she did not obtain a satisfactory resolution, she was to inform upper management of the problem. While Prigmore claims to have had two conversations with her store manager about suggestive comments directed towards her by Buchanan, she admits that she never formally reported to anyone that she was being "sexually harassed" by Buchanan or availed herself of the "Smart Start" procedures that she was clearly familiar with in her capacity as an assistant manager. The Court is likewise puzzled by the fact that Prigmore

## II.

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). When one party moves for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Issues of material fact are "genuine" only if they require resolution by a trier of fact. *See id.* at 248, 106 S.Ct. at 2510. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *See id.* at 247–48, 106 S.Ct. at 2510. Nevertheless, if the evidence is such that a reasonable factfinder could find in favor of the nonmoving party, summary judgment should not be granted. *See id.; see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Dixon v. State Farm Fire & Cas. Co.*, 799 F.Supp. 691 (S.D.Tex. 1992) (noting that summary judgment is inappropriate if the evidence could lead to different factual findings and conclusions). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. *See Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513.

## III.

In two companion cases, *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) and *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998), the United States Supreme Court articulated a clear framework for trial courts to follow when analyzing supervisor sexual harassment lawsuits. At the first step of the *Ellerth/Faragher* analysis, the Court must determine whether the complaining employee suffered a "tangible employment action." *See Casiano v. AT&T Corp.*, 213 F.3d 278, 283 (5th Cir.2000) ("Determining whether the complaining employee has suffered a tangible employment action is the indispensable first step in every supervisor sexual harassment/vicarious liability case under Title VII"). The Supreme Court defines a tangible employment action as "an official act of the enterprise, a company act," such as "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Ellerth*, 524 U.S. at 761, 118 S.Ct. at 2268. If the employee has suffered such an action, the suit can be analyzed as a "quid pro quo" case. *See Casiano*, 213 F.3d at 283. On the other hand, if the employee did not suffer a tangible employment action on account of the alleged harassment, the Court will analyze the suit as a "hostile environment" case, and an alternative branch of the *Ellerth/Faragher* analysis applies.

### *Prigmore's Quid Pro Quo Claim*

In this case, Prigmore's termination undoubtably qualifies as a "tangible employment action." Thus, the Court will initially analyze the instant suit under the "quid pro quo" branch of the *Ellerth/Faragher* framework. The second step of the requisite "quid pro quo" analysis necessitates that the Court decide whether the

waited until several months after her termination to file a charge of discrimination, and wonders why Prigmore never informed her own husband, a fellow Houston Pizza employee, of the alleged harassment until after she was terminated.

tangible employment action suffered by the employee resulted from the employee's acceptance or rejection of the alleged sexual harassment by the supervisor. *See Ellerth*, 524 U.S. at 753–54, 118 S.Ct. at 2265; *Casiano*, 213 F.3d at 283. If the employee cannot show such a nexus, the employer is not subject to Title VII liability. On the other hand, "proof that a tangible employment action did result from the employee's acceptance or rejection of sexual harassment by [her] supervisor makes the employer liable, *ipso facto;* no affirmative defense will be heard." *Casiano*, 213 F.3d at 284; *see also Ellerth*, 524 U.S. at 753, 761–62, 118 S.Ct. at 2269 (explaining that a tangible employment action taken by the supervisor becomes for Title VII purposes the act of the employer); *Faragher*, 524 U.S. at 804–05, 118 S.Ct. at 2291.

█ Prigmore concedes that Rios terminated her employment with Houston Pizza because she violated the company cash handling policy. Put another way, the undisputed facts conclusively prove that Prigmore was fired for one reason alone-the $100.00 that was missing from Houston Pizza's bank bag. Absolutely

nothing in Prigmore's evidence or the inferences drawn from it support a conclusion that she was terminated because she rejected (or accepted) Buchanan's alleged advances. Moreover, there is absolutely no evidence suggesting that unwelcome sexual harassment was present in this case to begin with.[4] As such, the Court concludes that Prigmore's "quid pro quo" sexual harassment claim must fail, as a matter of law, because she has not set forth competent summary judgment evidence to create a genuine issue of material fact that she was subject to sexual harassment that culminated in a tangible employment action. Accordingly, Houston Pizza's Motion for Summary Judgment on Prigmore's "quid pro quo" sexual harassment claim is hereby **GRANTED.**

### Prigmore's Hostile Environment Claim

█ Having determined that the absence of a tangible employment action with a nexus to Buchanan's alleged conduct prevents further "quid pro quo" analysis of Prigmore's claims, the Court will now turn to the "hostile environment" branch of the *Ellerth/Faragher* framework. An employ-

---

4. The Court has carefully reviewed all conduct and comments attributed to Buchanan and concludes that the statements and actions, as a matter of law, do not constitute sexual harassment. Although the comments and actions can be characterized as flirtatious, and perhaps indicative of Buchanan's romantic interest in Prigmore, or worse, childish and patronizing, they simply cannot be characterized as rising to the level of sexual harassment. Some of Buchanan's remarks certainly could be considered insensitive, indecent, inappropriate or even offensive; however, "that one may be offended by a remark does not elevate the statement to the level of sexual harassment." *Pfeil v. Intecom Telecomms.*, 90 F.Supp.2d 742, 748 (N.D.Tex. 2000). Title VII is not a general civility code. *Id.* (citing *Faragher*, 524 U.S. at 788, 118 S.Ct. at 2283–84). Sexual harassment by definition means "[u]nwelcome sexual advances, request for sexual favors, and other verbal or

physical conduct of a sexual nature." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) (citing 29 C.F.R. § 1604.11(a) (1985)). In this case, there are absolutely *no* allegations that Buchanan directly propositioned Prigmore for sex; had sex with her; threatened her or in any way implied that her continued employment was conditioned on her granting him sexual favors; touched or fondled her; promoted a sexually charged environment; or that he implied or stated that Prigmore was incompetent because of her sex. *See Pfeil*, 90 F.Supp.2d at 748 (citations omitted). For these reasons, while certainly not condoning it, the Court holds that the alleged comments and conduct of Buchanan do not, as a matter of law, constitute sexual harassment. Thus, it necessarily follows that Prigmore's termination could not have been because of her sex.

ee seeking to establish a hostile environment claim involving harassment by a supervisor must establish four elements: (1) that the employee belongs to a protected class; (2) that the employee was subject to unwelcome sexual harassment; (3) that the harassment was based on sex; and (4) that the harassment affected a "term, condition, or privilege" of employment. *See Pfeil,* 90 F.Supp.2d at 748. If the employee fails to establish all four elements, Title VII does not impose vicarious liability on the employer; but if the employee makes a successful showing, vicarious liability attaches-unless the employer successfully establishes both prongs of the *Ellerth/Faragher* affirmative defense. *See Casiano,* 213 F.3d at 284. To prevail on this affirmative defense, the employer must prove that (1) it exercised reasonable care to prevent and correct promptly any such sexual harassment, and (2) the employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise. *See Faragher,* 524 U.S. at 807, 118 S.Ct. at 2293; *Casiano,* 213 F.3d at 284.

To establish that the harassment affected a "term, condition or privilege" of her employment, Prigmore must show that the discriminatory conduct was severe or pervasive enough to create an objectively hostile or abusive working environment. *See Shepherd v. Comptroller of Pub. Accounts of State of Texas,* 168 F.3d 871, 873 (5th Cir.1999); *Butler v. Ysleta Indep. Sch. Dist.,* 161 F.3d 263, 269 (5th Cir.1998). Courts determine whether a working environment is sufficiently abusive to give rise to a Title VII claim by reviewing "all of the relevant circumstances, including the frequency of the conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with the employee's work performance." *Pfeil,* 90 F.Supp.2d

at 749 (citing *Butler,* 161 F.3d at 269). Incidental or occasional sexual comments, discourtesy, rudeness, or isolated incidents (unless extremely serious) are not discriminatory changes in the terms and conditions of a worker's employment. *Id.*

Furthermore, even if Prigmore establishes the existence of a hostile environment, she must also establish that the abusive or hostile environment altered the terms and conditions of her employment. *See Nash v. Electrospace Sys., Inc.,* 9 F.3d 401, 403 (5th Cir.1993). Central to this inquiry is whether the Buchanan's alleged actions undermined Prigmore's workplace competence, discouraged her from remaining in her job or kept her from advancing in her career. *See Pfeil,* 90 F.Supp.2d at 749; *Shepherd,* 168 F.3d at 874; *Butler,* 161 F.3d at 270. Title VII is intended only tp prohibit and prevent conduct "that is so severe and pervasive that it destroys a protected class member's opportunity to succeed in the workplace." *Shepherd,* 168 F.3d at 874. Equality, the overall goal of Title VII, "is not served if a claim can be maintained solely based on conduct that wounds or offends, but does not hinder an employee's performance." *Pfeil,* 90 F.Supp.2d at 749 (citing *Weller v. Citation Oil & Gas Corp.,* 84 F.3d 191, 194 (5th Cir.1996)).

After reviewing the summary judgment evidence submitted in the instant action, the Court concludes that Prigmore's hostile environment claim necessarily fails because she has not created a genuine issue of material fact regarding the issue of whether the alleged harassment was severe or pervasive enough to alter the terms and conditions of her employment. As previously stated, some of Buchanan's alleged comments and conduct could be considered improper and in extremely poor taste; however, at best, these remarks and actions offended Prigmore and caused her transitory embar-

rassment. Hurt feelings do not affect the conditions of employment in a manner that gives rise to Title VII liability. *See Pfeil,* 90 F.Supp.2d at 750. Rather, the challenged conduct must be both objectively reasonable (meaning that a reasonable person would find the conduct hostile and abusive) and subjectively offensive (meaning that the victim perceived the conduct to be hostile or abusive). *See id.* at 749; *Shepherd,* 168 F.3d at 874. Moreover, as noted above, Buchanan's alleged conduct was not sexual harassment. As previously discussed, Prigmore does not allege that Buchanan directly propositioned her for sex; threatened her in any way that implied her future employment was conditioned on her welcoming his sexual advances; touched or fondled her; or commented on her sex life (or his own sex life).[5] Moreover, none of his alleged comments insinuated that Prigmore was unable to perform her assigned duties on account of her gender. Succinctly put, absolutely nothing that Buchanan allegedly said or did was so extreme or severe that it prevented Prigmore from succeeding in the workplace or destroyed her opportunity for advancement at Houston Pizza. *See Weller,* 84 F.3d at 194. Indeed, Prigmore was promoted and transferred to her satisfaction, and even upon termination expressed that she "loved" her job. Furthermore, as pointed out in note three above, while the precise time period over which the alleged harassment took place is unclear, Prigmore never formally reported it pursuant to the company's "Smart Start" policy or actively pursued any corrective action whatsoever. Consequently, the Court finds that Prigmore has not established, or created a genuine issue of material fact, that her working environment was hostile or abusive. Accordingly, Houston Pizza's Motion for Summary Judgment on Prigmore's "hostile environment" sexual harassment claim is hereby **GRANTED.**

## IV.

As this Court has previously explained, "[w]hen a plaintiff alleges a claim for intentional infliction of emotional distress based on the same facts making up her Title VII claim, the former is preempted." *Stewart v. Houston Lighting & Power Co.,* 998 F.Supp. 746, 757 n. 8 (S.D.Tex.1998) (citing *Jackson v. Widnall,* 99 F.3d 710, 716 (5th Cir.1996); *Rowe v. Sullivan,* 967 F.2d 186, 189 (5th Cir.1992)). Therefore, because Prigmore's common law tort claim for intentional infliction of emotional distress and her Title VII claim arise from identical factual allegations, her intentional infliction of emotional distress claim cannot survive. And even if not preempted, the facts alleged by Prigmore do not even begin to rise to the level of egregiousness that the Texas Supreme Court requires to support such a cause of

---

5. The Court acknowledges that some of Buchanan's alleged comments are suggestive and may amount to indirect propositions for sex. For instance, Buchanan's alleged suggestion that Prigmore "pay her husband back [for his infidelity]" and his alleged statement that "I won't tell, if you don't tell" appear to constitute at least a potential invitation for sexual relations. Nevertheless, such oblique references to sex, made on an infrequent basis, do not give rise to an actionable hostile environment claim. *See, e.g., Shepherd,* 168 F.3d at 872–75 (holding that supervisor's unquestionably sexual conduct towards an employee, including the supervisor's attempts to look down employee's clothing and remark that "your elbows are the same color as your nipples," did not create a genuine issue of material fact that the harassment constituted a hostile working environment); *Pfeil,* 90 F.Supp.2d at 745–747 (holding that supervisor's conduct towards complaining employee, including the supervisor's request for a "personal and private lunch," "grunting" and his checking her "from head to toe," did not create a genuine issue of material fact that the harassment constituted a hostile working environment).

action. *See Brewerton v. Dalrymple,* 997 S.W.2d 212, 216 (Tex.1999) (explaining that, in order the sustain a claim for intentional infliction of emotional distress under Texas law, the conduct at issue must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community"); *GTE Southwest, Inc. v. Bruce,* 998 S.W.2d 605, 612–13 (Tex. 1999) (explaining that mere insults, indignities, threats, annoyances and petty oppressions do not rise to the level of extreme and outrageous conduct and that the conduct required for an intentional infliction of emotional distress cause of action in the workplace exists only in the most unusual of circumstances). Accordingly, Houston Pizza's Motion for Summary Judgment on Prigmore's intentional infliction of emotional distress claim is hereby **GRANTED.**

**IT IS SO ORDERED.**